IN THE SOVEREIGN LAND OF DUPAGE COUNTY, ILLINOIS THE STATE,
THE UNITED STATES OF AMERICA, THE REPUBLIC, NON-FEDERAL AND
NON-CORPORATE AND NON-COMMERCIAL; AND UNDER ONLY THE
"AMERICAN FREE FLAG OF PEACE" AND NOT THE
MARITIME-ADMIRALTY FLAG OR JURISDICTION
Styled as:



district court of the United States
(original jurisdiction)
northern district of Illinois, eastern division



**F I L E D**

APR 0 5 2011 MH
APR 5 2011
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

---

Michele Di Cosola; Paula Joanne Di Cosola
One of the People of the State of Illinois Attornatus
Privatus

    Petitioner(s), on behalf of:

    In Re;  PAULA DI COSOLA and MICHELE DI
COSOLA

        PLAINTIFF(S),

        Vs

CITIMORTGAGE, INC.; SANJIV DAS,
and/or his successor, individually, and in his official
capacity as PRES/CEO of CIITMORTGAGE, INC.; PAUL
INCE as CFO of CITIMORTGAGE, INC.;GARY CRITTENDEN
as CFO of CITIMORTGAGE, INC.;JANET L SIMS, SVP of
CITIMORTGAGE, INC.; MICHAEL E BURNS, LSS of
CITIMORTGAGE,INC; CODILIS AND ASSOCIATES, P.C.;
ERNEST CODILIS; JANET AUGUSTYNE; and BERTON J
MALEY; MERS; KIM KRAKOVIAK,VP of  MERS
INGRED WHITTY, VP of MERS; ACQUEST TITLE
SERVICING, LLC.

        DEFENDANT(S)

---

AT COMMON LAW-COURT OF RECORD
VERIFIED COMPLAINT/DECLARATION & AFFIDAVIT
RE: INJUNCTIVE RELIEF FOR: TILA, RESPA,
FDCPA, LAND PATENT, S.E.C. VIOLATIONS; FRAUD
PENDING CASE:
RE: CHAPTER: 11
BANKRUPTCY CASE NO.:  10-B 55962
BANKRUPTCY Judge: EUGENE R. WEDOFF
CREDITOR NO.: 16569858
CLAIM NO.: ___

ADDITIONAL PENDING CASE:
RE: 18TH JUDICIAL COURT CASE NO. 2009CH3866
RE: INTERLOCUTORY ORDER-JUDGMENT TO
FORECLOSE

district court of the United States Case No.:

**11-cv-02308**
**Judge Gary Feinerman**
**Magistrate Judge Michael T. Mason**

---

## "Verified Complaint"

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY
JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);
RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;
28 U.S.C. § 2201**

Page 1 of 73

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY
JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);
RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;
28 U.S.C. § 2201**

NOW COMES Demandant(s), Michele: of the house Di Cosola("Demandant") and Paula-Joanne: of the house Di Cosola("Demandant"), under threat, duress, coercion of injury, loss of life and liberty, threat of and, in fact, a loss of a right to pursue happiness, and being forced to damage or break the "LAW OF THE FATHER," comes now, in peace, by Special Restricted and Limited Appearance and Visitation, *sui juris, suae potestate esse,* One of the People, ("Demandant"), not PRO SE, a natural born living native man and woman, Illinois, the state, with 'inhabitance', not 'residence,' in DuPage County, Sovereign, "Illinois-the-state-republic" and Secured Party Creditor and Real Party in interest, in the above numbered case, and with non-comparable, non-adequate, uneven 'playing field,' in violation of My 'United states of America – The Republic – Constitutional Rights,' who hereby objects to the stated claims of the CITIMORTGAGE, INC. (hereinafter, defined as "The Borrower-in-fact") and demands discovery. declaring our forum to be a Court of Record at common-law, for an EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT ORDER or TRIAL BY JURY, before the district court of the United States (original jurisdiction) northern district of Illinois, eastern division, on the 6th, of April, 2011, at 219 South Dearborn Street, Room ____, Chicago, Illinois, at _____ AM/PM, I will be heard by the honorable presiding judge _____, respectfully entering and requesting the indulgence of the Court to grant Demandant(s) EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT or TRIAL BY JURY against CITIMORTGAGE, INC. and move to dismiss and discharge such, fraudulently alleged security interest, interlocutory order and debtor(s) lien, pursuant to **RULE 65(a)(1) and (2); RULE 9(b); RULE**

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

**60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201** and in support thereof state(s):

## JURISDICTION

This Court has Jurisdiction pursuant to 28 U.S.C. §§§ 1331, 1332 and 1334.

## VENUE

The venue shall be a "Court of Record" under Common Law, and as a Court of Record, the People shall be the tribunal. *"A 'court of record' is a judicial tribunal having attributes and exercising functions independently of the person of the magistrate designated generally to hold it..." (Jones v. Jones, 188 Mo.App. 220, 175 S.W. 227, 229; Ex Parte Gladhill, 8 Metc., Mass., 171, per Shaw, C.J).*

## NOTICE

Demandant/Plaintiff does not stipulate, submit, waive, authorize, oral or written, the permission of a Magistrate to here said case.

## JUDICIAL NOTICE

This is a judicial notice that American Jurisprudence, Common Law and the People are also what is on trial here and not just this instant case. This Court is declared a Court of Record. This Court is Admonished of the importance of such case which is beyond the scope of just damage to

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

the defendant, its compurgators and assemblymen. It is a political and social decision based on

Status, Standing, Jurisdiction, Venue, TILA, Negotiable Instruments, Uniform Codes, Statutes,

Treaties and Positive law, which will impact the course of common law, rights, remedies, liberties

of the People and will balance the corruption of power usurped by said inferior home rule trial

courts in collusion with the banksters and bank represented attorneys.


## QUESTION THAT IS RAISED ON THE PLEADINGS


Does any of the following Federal, State and/or International, Codes, Statutes, Rules,

Treaties and any other remedies used by the Plaintiff(s), filed in many previous cases and this

instant complaint, afforded the People of the State of Illinois, have any more recognition in the

courts at law or in equity, without an attorney and/or still provide the merits and teeth needed to

protect the People's rights of Life, Liberty, Pursuit of Happiness and Due Process of law or are

the Defendant Bankers, Attorneys, and Local Home Rule Judges and Clerks, (the new "White

Collar 1920's Untouchable RICO Act Mafia of the 21st Century"),  working in collusion as a

representative form of government gone rogue, writing and practicing law at the bench and at the

BAR, exclusively using home rule hearsay evidence, undisclosed confession of judgments,

incomplete filings of Mortgages without Promissory Notes and Allonges in the Keeper of the

Records("Recorder of Deeds/Registrar") and/or U.C.C., exempted from unverified proof of

jurisdiction, venue, claim, real injured party(ies) and false affidavit complaints, exclusively using

Admiralty Marshal law, Contempt of Court, U.C.C., Confession of Judgment, Actions allowing

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY
JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);
RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;
28 U.S.C. § 2201**

the Striking and Barring of all Counterclaims, Answers, and Pleas using a monopoly

unincorporated communist party BAR card, to sway and give the 800 pound gorilla Banker

whatever, whenever they want, leaving the People of this state without remedy? And if so, does

the Court, Attorneys, Clerks and Banks, at law or in equity, have to follow the rules given them?

And if so, why are they not following them and getting away with the largest crime in the history

of mankind, "The Mortgage Foreclosure Pandemic" by way of the real Weapons of Mass

destruction("WMD") securitization fraud, credit default swaps and TARP bailouts.

## SUMMARY OF CASE

Defendant(s) have dishonored Plaintiff(s) by non contested, non rebutted, non responded

to, cured and perfected: Debt Validation Letter; Notary Presentment; Notary Protest; Nihil Dicit

Judgment; Notice of Cancellation pursuant to TILA; RESPA, Qualified Written Request(QWR);

Negative Averment; Affidavit; Counterclaim; Request to Admit; Motion to Produce; Motion to

Compel; Motion for Avoidance; Exemption Claim in Bankruptcy, Proof of Claim, Federal Land

Patent Claim; Homestead Rights Claim, Tenants in Common Claim, U.C.C. Procedures and

Cease and Desist Letter. They have dishonored the court by way of willful malicious wanton acts

of fraud, deceit, collusion, fraud on the court, conspiracy to commit fraud, inland piracy,

collateral attack, securitization fraud, perjury of oath(s), perjury of affidavits, falsifying evidence,

countless constitutional violations and perpetual daily committed crimes of the same magnitude

against the public at large as a Foreclosure mill who's tactics and remedies are criminal at least

and treasonous at best.

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY
JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);
RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;
28 U.S.C. § 2201**

## FACTS SHOWING THE EXISTENCE AND NATURE OF THE CLAIMED EMERGENCY

This expedited action of a "Temporary" or "Perpetual Injunction" in addition to "Declaratory Judgment" or "Trial by Jury" on this motion is based on grounds to avoid immediate, imminent and irreparable injury, loss, damage and harm, which would result to the Demandant and other interested parties, before the adverse party can be heard in opposition related to the TILA violations, RESPA violations, FDCPA violations, U.C.C. violations, ILCS violations, fraud, collateral attack and inland piracy acted upon against the Demandant. Relief of injunction against a Sheriff sale scheduled for April 7, 2011 is needed in less time than would normally be required for the district court, bankruptcy court and or appeal court, since extension of stay was denied and after objection, final denial was entered. A consolidation of the hearing for case # 2009CH3866 (18th Judicial Court) and case # 10-B 55962 (U.S. Bankruptcy Court) with the "Trial on the Merits" is requested since evidence that is received on this motion, would be admissible at trial and becomes part of the trial record and need not be repeated at trial. Preservation of a "Trial by Jury" is hereby reserved.

## AFFIDAVIT AND DECLARATION OF FACTS

### FIRST CAUSE OF ACTION

1)      Unsecured Non Priority Alleged Creditor, CITIMORTGAGE, INC., hereinafter "CITI", has set schedule for Sheriff Sale with the DuPage County Sheriff's Office on April 7, 2011. Such action is after Demandant has executed a Truth in Lending Act (TILA) Disclosure Request;

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

Execution of Cancellation by way of Notice of Right to Cancel; Notice of perfected

allodium/allodial land patent at law, Declaration of Homestead, default of: Validation of Debt

Request; CEASE and DESIST; Revocation of Power of Attorney; Real Estate Settlement

Procedures Act (RESPA-QWR) Qualified Written Request; Motion for Avoidance; International

Statute Staple Commercial Lien via Notary Presentment and Protest; and Void Judgment, due to an

Negative Averment entered as a Court of Record, in Common law, at Trial Court, dishonored by

way of non response. All of which was filed with the Recorder of Deeds and/or Clerk of the Court,

of DuPage County and/or given to Sheriff Zaruba, Judge Cerne, Judge Gibson, Chris Kachiroubas,

Clerk of the 18th Judicial Court.


2)      Such scheduling was done after a request by CODILIS AND ASSOCIATES, P.C.,

hereinafter "CODILIS", to confirm Stay was expired for debtors-in-possession. CODILIS did not

file a proof of claim and/or had standing to file claim and or procedural motion, into the

voluntary bankruptcy proceeding since they had lost all administrative remedy to proceed on

such erroneous and alleged third party collection of debt per the "Fair Debt Collection Practice

Act"(FDCPA) and by default of non response to all federal remedy afforded and executed by

Movant.


3)      CITI and CODILIS are reliant upon a "void ab initio judgment" that was "fraud upon the

court"(F.R.C.P. R. 9(b)) by way of Malice, Intent, knowledge, and dishonor, of all executed

State, Federal, U.C.C., International Codes, Rules, Regulations, Statutes, Treaties under the

Laws of Nations and Constitution(s)(state and federal) that afford Demandant any form of

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY
JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);
RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;
28 U.S.C. § 2201**

remedies. CITI has no Status, Standing, and is in lack of subject-matter jurisdiction in the

municipal court since a Negotiable Instrument, TILA dispute and cancellation, RESPA dispute,

and Diversification of Citizenship was not within the Municipal Courts exclusive and original

jurisdiction.(28 U.S.C. § 1332 and F.R.C.P. R.12(b)(1). Statutory Presumption has and is

challenged. CITI lacked personal jurisdiction over the real man as an individual since

Demandant filed under special restricted and limited appearance sui juris without joinder.

Jurisdiction and venue was not submitted and/or proven when challenged pursuant to demurrer

and abatement in the original foreclosure complaint and all foreign proceedings must be done in

the district court of the United States or the State Court must act as a Federal Forum with all

procedures and process regulated by the F.R.C.P. (F.R.C.P. R.12(b)(2),(3) and (7)) CITI failed to

state a claim whereby relief may be granted.(F.R.C.P. R.12(6)). CITI failed to respond to the

Counterclaim Negative Averment entered by Demandant in the Trial Court within 21 days

pursuant to Illinois Supreme Court Rule 182. Judge Cerne errored in not entering a summary

judgment in favor of the Demandant or involuntary dismissal on the merits.


4)     Demandant filed an Exemption under Schedule C related to Declaration of Homestead,

Perfection of Land Patent, and Tenants in Common/Entirety. Such claim was followed up with a

"Motion for Avoidance" as a "Routine Motion". Such Motion was entered on 02/08/2011 into the

Bankruptcy Court Clerk's Office. This Motion was a "Procedural" also known as "Routine"

motion as a matter of law if not contested pursuant to U.S.C. 552(f)(1); Bankruptcy Code

4003(d) and 9014; and Bankruptcy Local Rule 9013-9(9). Court for such hearing was set for

3/9/2011. Judge EUGENE R. WEDOFF entered an order denying the Motion for Avoidance,

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY
JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);
RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;
28 U.S.C. § 2201**

based on a formula, stating that there is no equity in the property for Demandant to use such

Avoidance motion, which was confirmed by CODILIS when led with such question already

loaded with an answer to CODILIS. Demandant stated on record that she had an appraisal in her

hand that shows the Demandant has equity(Allodial/Homestead, at Law absolute ownership of

$620,000.00 or $100,000.00 alleged feudal statutory equity after the fraudulent non-existent

securities fraud loan that CODILIS and CITI are claiming.) Either way, there is positive equity.

CODILIS orally stated that the order was a procedural one and not a Judicial Lien so the

avoidance motion doesn't apply. In one sentence, and without needing to enter any answer in

writing within the 21 days(14 is the rule)or substantiate their claim, CODILIS was sustained in

his statement and Demandant was denied a Procedural/Routine motion that had cured and

perfected by way of non response from CODILIS. The Court errored and should have ruled in

favor of the Demandant and sustain such Order in favor of the Demandant simply for non

response and/or objection from CODILIS as a matter of law. Judge EUGENE R. WEDOFF,

further biased and prejudiced Demandant by stating on record that he would not let me get out

of a mortgage and that the Motion for Avoidance was denied. Making any further attempt for

objection or reconsideration final. CODILIS was in contempt of court for even being in the court

since all administrative remedy and due process rights have been exhausted by them.

Demandant objected to the denial order.


5)    Opportunity for Objection to Avoidance Motion within 21 days of mailing was afforded

to CITI and/or CODILIS. Such opportunity to object to such procedural and routine motion was

not executed by CITI and/or CODILIS. As of March 9, 2011, CITI and CODILIS have failed to

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY
JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);
RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;
28 U.S.C. § 2201**

enter in any due process rights and remedies and therefore have abandoned such rights and remedies. Silence is acquiescence, dishonor and acceptance by way of tacit procuration. Motion for Avoidance was therefore unopposed, therefore, pursuant to Federal Rules of Civil Procedure 7.1(f)(3)(c), Motion to Avoid should be sustained and Granted.

6)     On March 9, 2011 an Exparte Procedural/Routine Order as a Matter of Law was a ministerial duty to be sustained and ordered against CITI thereby rendering CITI, CODILIS, staff and/or any third party assistance, to Cease and Desist from any further collateral attack and inland piracy as an attempt to collect a debt as a third party debt collector and unsecured alleged creditor due to a discharged and dismissal of an Interlocutory Order from the inferior 18th Judicial Court of DuPage County. Such order was prejudiced against Demandant.

7)     Should CITI and/or CODILIS further their collection efforts by way of Sheriff Sale, the Bankruptcy Court, Trial Court(DUPAGE COUNTY-18TH JUDICIAL DISTRICT) and Adversary(CITI), will prejudice every form of remedy executed and afforded Demandant, violate every rule, code statute and treaty that has been established as positive law, to prevent such collateral attack without status, standing, jurisdiction, venue, cause of action, right of action, proof of claim, disclosure, due process and/or a real injured party.

8)     Demandant(s) are an inhabitant of a home commonly known as: 266 Thrasher Street, Bloomingdale, Illinois, which has been improved with over $200,000.00 of material and labor over a four year period. In 2009, the home in question was professionally appraised at

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

$1,350,000.00. The home has been recently appraised at $620,000.00 as of 03/06/2011. The alleged "credit bid" and "interlocutory order", is in the amount of $417,000.00, plus alleged late interest payments, court costs and attorney fees. In addition to deficiencies. Such claim was fraudulent on its face. Demandant has a home that is unique to them and cannot be replaced. The costs to replace my unique home; Demandant(s) rights violated to achieve the collateral attack; the Trespass on Demandant(s): perfected inviolable and immune, allodium/allodial Land Patent; Homestead right claim; uncontested and perfected Motion for Avoidance; uncontested and perfected TILA cancellation rights; non response or resolution to RESPA Qualified Written Request; non-response to Debt Validation Letter(Fair Debt Collection Practice Act Violation); violation of grace period provided under TILA for the "Dunning Letter" notice and right to dispute; non-response to Negative Averment, non-response to Non Statutory Common Law Plea in Abatement, failure to file a Proof of Claim after Demandant disputed debt in Bankruptcy Court, and violation of Demandant(s) exemptions claimed schedule C.; violation of a matter of law sustained uncontested order for avoidance; unlawful undisclosed loan as required by TILA, unlawful and undisclosed novation, confession of judgment; securitization fraud, and failure to discharge a bifurcation of note and mortgage.

9)      It is clear that the function of the bank (CITI) is to invest, lend and/or risk nothing.(not one penny) and gain everything, through securitization fraud, by way of Fraud on the Court and Money Judgment(credit bid). There is no value consideration established by both parties and full disclosure as well as copies of all closing documents were not afforded Demandant at time of closing or any time thereafter requested. It is also clear that the bank will under bid on the

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

property in order to purchase the property as an REO and claim a deficiency for unsecured debt and claim against personal property of the debtor-in-possession, as well as to preserve additional credit bid funds(money made from thin air) if possible. Then the bank can sell the home as REO at retail. This is how REO (Real Estate Owned) property is obtained from the banks. RICO Act violations are a daily practice for CODILIS.

10) CITI will claim a loss with the FDIC insurance(if not done already), The bank has claimed TARP money already. The investors/stock holders (mortgage backed security holders-true holders in due course) will also claim a loss and tax write off(thereby receiving a benefit and discharging the debt). FDIC will reimburse 80% of the loss to the bank for the loan balance plus all alleged late payments, while the bank will be given an opportunity to sell the property to the highest offer from a local realtor to the public. The bank is paid from the initial promissory note, the money judgment, the retail sale price, the insurance claim, the TARP claim, the tax credit exemption for write off and the deficiency for under bidding the property. How many times does a bank receive enrichment and payment for a loan they never gave or a promissory note they do not have or where the mortgage(not note) was unlawfully transferred? Bifurcation makes any promissory note and/or mortgage void and res judicata. By way of credit default swaps, alleged creditor has purchased the alleged defaulted note(bad paper debt) as a third party debt collector. Bifurcation has caused the promissory note and mortgage to be void ab initio.

11) All done by way of non response to Demandant's TILA Right to Cancel execution, Trespass on a Claimed Federal Land Patent, Homestead and Tenants in Common, Exemption

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

Claim. Additionally, causing other known absolute allodial land patent owner, Michele: of the house Di Cosola, who has not filed in this bankruptcy, irreparable loss from the collateral attack by way of extortion, of such assets which are federally protected, immune and inviolable. The bank was able to avoid answering an avoidance motion by non response when it is a "Routine Motion"/"Procedural Motion" and a matter of law that Judge WEDOFF had a ministerial duty to sustain when the Motion was not objected to. Instead, Judge WEDOFF stated "you are not getting out of a Mortgage". This causing complete violation of due process, prejudice and bias against Demandant(s).

12)     Imminent foreclosure of Demandant's inhabitants presents a threat of irreparable harm. The replacement costs of such property in question by way of collateral attack would be unachievable and therefore irreparable in injury, damage and harm. In addition, there is a Commercial Lien against CITI and CODILIS in the amount of $5,000,000.00, by way of Notary Presentment and Protest. CODILIS is acting in a conflict of interest without an arm's length transaction, since they have a direct interest in the claim and the court must acknowledge that such asset liens against such bank and law firm is lawful and legal. Offset and Set-off of such claim can be partially taken out to "again" to discharge such illegal and alleged debt from CITI but would be in addition to a TILA discharge already entitled to the Demandant which would cause double enrichment to CITI again.

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

## SECOND CAUSE OF ACTION

13).    Paragraphs 1 through 12 are included by reference as though fully stated herein.

14)    Demandant(s), Michele and Paula Joanne of the House Di Cosola, owners of his and her

principle inhabitance located at 266 Thrasher Street, Bloomingdale, Illinois ("Property"),

refinanced the property by entering into a promissory note with Defendant, CITIMORTGAGE,

INC. ("CITI"), secured by a first deed of trust/mortgage on the property. The proceeds were used

to pay off the existing mortgage held by a third party lender. CITI was provided a TILA

cancellation letter to execute his right to rescind a consumer credit transaction.

15)    Demandant(s) were not provided with copies of the loan documents when he signed them.

Demandant(s) had met employee of CITI at the CITI branch to sign said promissory note and

mortgage. Demandant(s) asked employee for copy of all documents signed. Employee stated that

such documents would be provided in the mail at a later date and that she did not have time to

make me copies since she was running behind on many closings for the day. After requesting by

phone on two occasions, bank said to be patient and they would come. Documents that were

signed were never provided to Demandant(s) until a copy of such was filed in a foreclosure case

when the promissory note was in default and after Demandant(s) elected to cancel his mortgage

pursuant to the Truth in Lending Act ("TILA", 15 U.S.C. § 1601et. seq. via "Notice of Right to

Cancel". The three year time to execute a right to cancel had not expired yet because all of the

material disclosures were not made by CITI as required by TILA

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY
JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);
RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;
28 U.S.C. § 2201**

16)     CITI failed to respond to the TILA cancellation with an opportunity to rebut and

continued with the foreclosure against all TILA and Fair Debt Collection Practice Act ("FDCPA")

requirements. Never once attempting to cancel or postpone said unlawful foreclosure, set-off said

debt, return said monies or counter said offer entered in the Notice of Cancellation. An offer for

settlement was made to CITI in the TILA cancellation providing them a settlement for their fraud

in the amount of the mortgage and the home itself. Since three times punitive damages of the

future entire interest earned were entitled to the Demandant(s) for fraud. Demandant(s)  never

received any offer to return and make whole again Demandant(s)  with relation to all down

payment funds, closing costs or monthly payments made.  Nor for a settlement offer. This forces

CITI to lose all rights and security interests in the property.


17)     TILA and Reg Z contain detailed disclosure requirements for consumer loans and

provides for remedy when a lender violates such requirements by affording borrower to rescind a

consumer loan secure by the borrower's primary dwelling.


*"TILA allows the borrower's to rescind a consumer loan secured by the borrower's primary*

*dwelling. Technical or minor violations of TILA or Reg Z, as well as major violations, impose*

*liability on the creditor and entitle the borrower to rescind"* Semar v. Platte Valley fed. Sav. &

Loan Ass'n., 791 F.2d 699, 703-04 (9th Cir. 1986) citing 15 U.S.C. § 1635(a).


*"TILA requires that the documents state specifically the last date on which [borrower] could*

*rescind the loan agreement without penalty. TILA's 'buyer's remorse' provision allows borrowers*

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY**
**JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);**
**RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;**
**28 U.S.C. § 2201**

*three business days to rescind, without penalty, a consumer loan that uses their principal*

*dwelling as security. TILA and its regulations, issued by the Federal Reserve System, 12 C.F.R.*

*§§ 226.1-.29 ('Reg Z'), require the lender to provide a form stating the specific date on which the*

*three-day rescission period expires. If the lending institution omits the expiration date and fails to*

*cure the omission by subsequently providing the information, the borrower may rescind the loan*

*within three years after it was consummated."* Id. at 701-02, citing 15 U.S.C. § 1635(a) & (f); 12

C.F.R. § 226.23(b)(5).


18)      If the borrower timely exercises his or her right to rescind, the security interest given rise

to the right of rescission becomes void..." 12 C.F.R. § 226.23(d).  Since the Demandant(s) was not

provided with all signed closing documents, or a notice of the last date on which he could rescind

the transaction, until after the period had expired and only when they elected to sue, Defendant

did not provide Demandant(s)  with material disclosures as required by 15 U.S.C. § 1635(a) and

Reg Z. Demandant(s)  therefore is entitled to rescind said loan within the three years as of

11/04/2008.


19)      Since Demandant(s) was within the time frame to send such rescission letter, the security

interest in the property is void. Furthermore, lender failed to provide for the return of all monies

deposited and or paid, to make Demandant(s)  whole again and or respond to the offer given by

Demandant(s), since it was unreasonable, unfair and impracticable to leave such investment and

premise or return such property, making such Demandant(s)  whole again without suffering

imminent irreparable damage and harm.

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY
JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);
RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;
28 U.S.C. § 2201**

20) The lender cannot foreclose on a property without a security interest in it. Bifurcation prevents such claim.

21) Demandant(s) has demonstrated a strong probability of success on the merits without the prejudice of the Defendant's alleged claims.

22) Without the Court granting such Perpetual Injunctive Order("PIO") and Injunctive Relief, Defendant will be allowed to complete such imminent unlawful wanton act and fraudulent wild deed Sheriff sale, which would expire the Demandant(s) right to rescind upon the sale of the Property. 12 C.F.R. § 226.23(a)(3). Demandant(s) would then lose his right to rescind the loan transaction, causing prejudice to his remedy already executed and perfected without further enforcement.

23) CITI and CODILIS have exhausted all administrative remedy and are therefore in contempt of court entering a motion or confirmation or even showing up to court and are committing an illegal act of fraud on the court even attempting to continue sale and confirmation of sale on an interlocutory order/judgment that is void.


## MEMORANDUM OF LAW, POINTS OF AUTHORITY AND MEMORIALIZATION, RELATED TO ACTIONS OF DEMANDANT AND DEFENDANT

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

24).    Paragraphs 1 through 12 and 13 through 23 are included by reference as though fully stated herein.

25)    That the Defendant received a Revocation of Power of Attorney on 08/03/2009.

26)    On June 20, 2009, Demandant mailed for settlement, discharge and closure, all needed documents for said Defendant. That the Defendant accepted a Private Issue Secured Bonded Promissory Note in the amount of $5,000,000.00 through off-set bond MD0001 in order to set-off said claim. After full discharge, the remainder of said monies were instructed to be applied to the Secretary of Treasury to assist in the United States debt. Additional documents that accompanied said Note were Bonded Promissory Instructions; Verified Notice of Tender of Payment; Acknowledgment & Proof of Mailing and Contents Mailed; Accepted for Value from Original Offer; Accounting Instructions; W9 Form to be filled out by appointed Fiduciary; 1099OID from to be filled out by Appointed Fiduciary; 1040V payment voucher; Due Presentment Under Notary Seal-Demand for Performance; Revocation of Power of Attorney(a second time); GSA Standard Form 28; GSA Optional Form 91; 1099A New Presentment for Codilis and Associates, P.C.

27)    That the Defendant failed to respond, rebut, accept and or discharge the debt causing said Defendant to be in dishonor. U.C.C 3-503/ 810 ILCS 3/503 provides for full discharge based on dishonor.

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY
JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);
RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;
28 U.S.C. § 2201**

28)     That the Defendant received a Notice of Dishonor and Opportunity To Cure Letter set on

July 10, 2009. Said letter afforded forbearance to the Defendant by providing another

opportunity to perform as appointed fiduciary of said alleged debt. Notice of failure to honor said

note and perform such fiduciary duty was cause for an additional $4,000,000.00 penalty which

was stipulated by non response if Defendant elected to ignore said instructions.


29)     That the Defendant failed to respond, rebut, accept and or discharge within the

forbearance granted time for the alleged debt causing said Defendant to be in dishonor for a

second time. This caused Defendant to stipulate to a total dishonor of $9,000,000.00.


30)     That Notary Public, Kanella D Antonopoulos signed and executed on July 20, 2009, a

NOTICE OF DISHONOR; CERTIFICATE OF DISHONOR/NON-PERFORMANCE and

CERTIFICATE OF PROTEST against CFO PAUL INCE; CITIMORTGAGE, INC.; CODILIS

AND ASSOCIATES; ERNEST CODILIS JR., which also verified status of foreign bill of

exchange in the amount of $9,000,000.00 for reason of dishonor by nonperformance. Defendant

was in Dishonor with notice that all Plaintiff's alleged debts are hereinafter forever discharged

per U.C.C. 3-306/815 ILCS 3/306 and that Judgment in Estoppel and Judgment in Nil dicit,

under Nihil dicit is therefore issued. Such notice was received by Defendant on July 23, 2009.


31)     That on July 23, 2009, Gary A. King, d/b/a/ COUNTY CLERK OF DUPAGE COUNTY

executed a CERTIFICATE OF AUTHORITY stating that " Full Faith and Credit is to be given

to this Notary's Official Attestations.

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY**
**JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);**
**RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;**
**28 U.S.C. § 2201**

32)     That on July 23, 2009 CODILIS AND ASSOCIATES, P.C.("CODILIS") filed an Assignment of Mortgage, signed and executed by Kim Krakoviak, Vice President of Mortgage Electronic Registration Systems, Inc., ("MERS") on behalf of CITIMORTGAGE, INC.("CITI") with the Recorder of Deeds which transferred rights of mortgage from MERS to CITIMORTGAGE, INC.

33)     MERS does not have standing at law to transfer rights to CITIMORTGAGE INC its agents successors, assigns and clients. See In Re: Walker, Case Number 10-21656-E-11, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS IN v. LISA MARIE CHONG, LEONARD E SCHWARTZER, BANKRUPTCY TRUSTEE, ET AL, DIST CASE # 2-09-CV-00661-KJD-L, BANKR. CT. CASE # BK-S-07-16645-LBR, Wells Fargo Bank N.A. v. Byrd, 2008-Ohio-4603, Lippincott v. East River Mill &Lumber Co., 79 Misc 559 (1913), Lexow & Jenkins P.C. v. Hertz Commercial Leasing Corp., 122 AD2d 25 (2d Dept 1986).

34)     That the Defendant violated the National Bank Act(National Currency Act) by signing blank as Janet L Sims, Senior Vice President and Attorney in Fact, of CITIMORTGAGE, INC. a Pay to the Order of stamp on the Promissory Note(check), causing the note to be defaced and altered, causing the Note to be void. The NBA states in Sec. 27. "*And be it further enacted*, That it shall be unlawful for any officer acting under the provisions of this act to countersign or deliver to any association, or to any other company or person, any circulating notes contemplated by this act, except as hereinbefore provided, and in accordance with the true intent and meaning

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

of this act. And any officer who shall violate the provisions of this section shall be deemed guilty of a high misdemeanor, and on conviction thereof shall be punished by fine not exceeding double the amount so countersigned and delivered, and imprisonment not less than one year and not exceeding fifteen years, at the discretion of the court in which he shall be tried." (See Exhibit "T" Signature page of Note)

35)    That on July 29, 2009, Notary Public, Kanella D Antonopoulos, deposited into the United States Post Office a CERTIFICATE OF MAILING to the Defendant who thereafter received on 08/03/2009, a Certificate of Mailing, Notice of Revocation of Power of Attorney, Notice of Removal of Trustees, and Notice of Cancellation, providing for an opportunity for Defendant to respond, rebut, or accept said cancellation and to return all moneys vested in such transaction which Plaintiff was fraudulently not afforded full TILA disclosure to, by not providing signed closing documents at closing or anytime thereafter. Defendant failed to respond, rebut, or accept said cancellation and failed to return and make whole Plaintiff of such moneys and have therefore lost any and all security interests claimed pursuant to the Truth in Lending Act ("TILA", 15 U.S.C. § 1601et. seq. via "Notice of Right to Cancel". The three year time to execute a right to cancel had not expired yet because all of the material disclosures were not made by CITI as required by TILA.

36)    CITIMORTGAGE INC its agents successors, assigns and clients are bound by the following Statute and Case Law to this transaction; **Reg. Z 12 C.F.R. 226.15 (d)(2)(3), 226.23(d)(2)(3).**

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

(d)(2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

(d)(3) **If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2)** of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation. See 15 U.S.C. § 1635(b); (See exhibit "S")

37)     TILA Achieves its Remedial Goals by A System of Strict Liability To further this congressional policy TILA achieves its remedial goals by a system of strict liability in favor of consumers when mandated disclosures have not been made. 15 U.S.C. 1640(a) (emphasis added). The standard applied is considered "strict liability in the sense that absolute compliance is required and even technical violations will form the basis for liability." Shepeard v. Quality Siding & Window Factory, Inc., supra. at 1299; In re McElvany, 98 B.R. 237, 240 (Bankr. W.D. Pa. 1989). This means that "technical or minor violations of TILA, or Reg. Z, as well as major

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

violations impose liability on the creditor and entitle the borrower to rescind [the loan]." Smith v.

Wells Fargo Credit Corp., 713 F.Supp. 354, 355 (D.Ariz. 1989); Jackson v. Grant, 890 F.2d. 118,

120 (9th Cir. 1989); Semar v. Platte Valley Fed. S & L Assoc., supra. at 704.Staley v. Americorp

Credit Corp., 164 F. Supp. 2d 578, 584 (D. Md. 2001); Gill v. Mid-Penn Consumer Disc. Co.,

671 F. Supp. 1021 (E.D. Pa. 1987). Again, once the court finds a violation such as not

responding to the TILA rescission letter, no matter how technical, it has no discretion with

respect to liability (in re Wright, supra. At 708; In re Porter v. Mid-Penn Consumer Discount

Co., 961 F,2d 1066, 1078 (3d. Cir. 1992); Smith v. Fidelity Consumer Discount Co., Supra. At

898. Any misgivings creditors may have about the technical nature of the requirements should be

addressed to Congress or the Federal Reserve Board, not the courts. This rule is inviolate and is

followed by courts in all jurisdictions. See, e.g., Smith v. Fidelity Consumer Discount Co., 989

F.2d 896, 898 (3rd Cir. 1990)(The federal Truth in Lending Act (TILA) achieves its remedial

goals by a system of strict liability in favor of consumers when mandated disclosures have not

been made); Lewis v. Dodge, 620 F.Supp. 135, 138 (D. Conn. 1985); In re Porter, 961 F.2d 1066

(3rd Cir. 1992); Rowland (John M., Carol S.) v. Magna Millikin Bank of Decatur, N.A., 812

F.Supp. 875 (C.D. Ill. 1992) ("even technical violations will form the basis for liability"); New

Maine Nat. Bank v. Gendron, 780 F.Supp. 52 (D. Me. 1992); Dixon v. S & S Loan Service of

Waycross, Inc., 754 F.Supp. 1567 (S.D. Ga. 1990); Woolfolk v. Van Ru Credit Corp., 783

F.Supp. 724 (D. Conn. 1990) (same with Unfair Debt Collection Practices Act); Morris v. Lomas

and Nettleton Co., 708 F.Supp. 1198 (D. Kan. 1989); Jenkins v. Landmark Mortg. Corp. of

Virginia, 696 F.Supp. 1089 (W.D. Va. 1988); Laubach v. Fidelity Consumer Discount Co., 686

F.Supp. 504 (E.D. Pa. 1988); Searles v. Clarion Mortg. Co., 1987 WL 61932 (E.D. Pa. 1987);

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY**
**JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);**
**RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;**
**28 U.S.C. § 2201**

"Liability will flow from even minute deviations from requirements of the statute and Regulation Z." Dixon v. S & S Loan Service of Waycross, Inc., 754 F.Supp. 1567, 1570 (S.D. Ga. 1990); Shroder v. Suburban Coastal Corp., supra. at 1380; Charles v. Krauss Co., Ltd., 572 F.2d 544 (5th Cir. 1978).Shroder v. Suburban Coastal Corp., 729 F.2d 1371, 1380 (11th Cir. 1984) ; Goldberg v. Delaware Olds, Inc., 670 F.Supp. 125 (D. Del. 1987); Curry v. Fidelity Consumer Discount Co., 656 F.Supp. 1129 (E.D. Pa. 1987); Laubach v. Fidelity Consumer Discount Co., 1986 WL 4464 (E.D. Pa. 1986); In re Wright, 133 B.R. 704 (E.D. Pa. 1991); Moore v. Mid-Penn Consumer Discount Co., 1991 WL 146241 (E.D. Pa. 1991); In re Marshall, 121 B.R. 814 (Bankr.C.D. Ill. 1990); In re Steinbrecher, 110 B.R. 155 (Bankr.E.D. Pa. 1990); Nichols v. Mid-Penn Consumer Discount Co., 1989 WL 46682 (E.D. Pa. 1989); In re McElvany, 98 B.R. 237 (Bankr.W.D. Pa. 1989); In re Johnson-Allen, 67 B.R. 968 (Bankr.E.D. Pa. 1986); In re Cervantes, 67 B.R. 816 (Bankr.E.D. Pa. 1986); In re McCausland, 63 B.R. 665, 55 U.S.L.W. 2214, 1 UCC Rep.Serv.2d 1372 (Bankr.E.D. Pa. 1986); In re Perry, 59 B.R. 947 (Bankr.E.D. Pa. 1986); In re Schultz, 58 B.R. 945 (Bankr,E.D. Pa. 1986); Solis v. Fidelity Consumer Discount Co., 58 B.R. 983 (E.D. Pa. 1986).

38)     Denial that the rescission process was intended to be self-enforcing, failure to comply with the rescission obligations subjects Defendant to liability, pursuant to 15 U.S.C. § 1640(a). See Pulphus v. Sullivan, 2003 WL 1964333, at *17 (N.D. April 28, 2003).

39)     Where, as here, if a Creditor does not respond to a properly served rescission and/or ignores a properly issued TILA notice of rescission, an Entry of Default, is appropriate and,

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

indeed, just and only recourse. **According to The Office of the Comptroller of the Currency, "a consumer's right to rescind is not affected by the sequence of the Rescission procedures or a court order modifying those procedures in both open and closed end credit (Comptroller of Currency, OCC Bulletin 2004-19 (May 7, 2004).**

40)    Once the court finds a violation such as not responding to TILA rescission notice, no matter how technical, it has no discretion with respect to liability. (in re Wright, supra. At 708; In re Porter v. Mid-Penn Consumer Discount Co., 961 F, 2d 1066, 1078 (3rd Cir. 1992); Smith v. Fidelity Consumer Discount Co. Supra. At 898).

41)    CITIMORTGAGE INC its agents successors, assigns and clients violated TILA Regulation Z (12 CFR 226.6(a) in the creation of this alleged credit account by not giving full disclosure about the nature of the alleged loan. See Schroder v. Suburban Coastal Corp., 729 F.2d 1371, 1380 (11th Cir. 1984), and Wright v. Mid-Penn Consumer Discount Co., 133 B.R. 816 (E.D. Pa. 1991).

42)    CITIMORTGAGE INC its agent's successors, assigns and clients intention was to deceive and misrepresent the material facts of the alleged transaction. See Stachnik v. Winkel, 394 Mich. 375, 387, 230 N.W. 2d 529, 534 (1975)

43)    CITIMORTGAGE INC its agents successors, assigns and clients are not attempting to collect on a credit account by extortionate means in accordance with TITLE 18 USC > PART I >

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

CHAPTER 42 > § 894. and are attempting to receive the proceed of extortion in accordance with TITLE 18 U.S.C. PART I > CHAPTER 41 > § 880

44)     CITIMORTGAGE INC. its agents successors, assigns and clients communication is prima facie evidence of extortion by an officer of the United States, Blackmail, and Conspiracy against Rights through color of law in accordance with TITLE 18 USC > PART I > CHAPTER 41 > § 872, TITLE 18 USC > PART I > CHAPTER 41 > § 873, and TITLE 18 USC > PART I > CHAPTER 13 > § 242.

45)     That on July 21, 2009, Plaintiff had deposited by United States Postal Mail a Real Estate Settlement Procedures Act("RESPA") Qualified Written Request("QWR").

46)     That on July 24, 2009 CODILIS AND ASSOCIATES, P.C., received said QWR and on 07/27/2009, CITIMORTGAGE, INC. received said QWR.

47)     That on July 30, 2009, Defendant's Legal Support Specialist, Michael E. Burns, in the Default Research and Litigation Department, sent acknowledgement of said QWR letter and stated at follows: " This letter is to acknowledge receipt of your alleged Qualified Written Request (QWR) regarding the above-referenced loan that was received in the Default Research & Litigation department (DRL) on July 29, 2009. We are presently researching your inquiry, and will forward a response when completed." No such research or response to Plaintiff's inquiry was

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

ever made as of this date. RESPA mandates that a resolution must be made within 60 days of the received RESPA QWR.

48)     Pursuant to 12 U.S.C. 2605(e)(1)(B)(ii) of the Real Estate Settlement Procedures Act it states: "..."[includes]a statement of the reasons for the belief of the borrower to the extent applicable, that the account is in error or **provides sufficient detail to the servicer regarding other information sought by the borrower."** Pursuant to Section 6 of the Real Estate Settlement Procedures Act (RESPA), Plaintiff presented to obtain copies of ALL documents pertaining to my mortgage loan. Under Section 6 of RESPA Defendant's are required to acknowledge this request within 20 business days (which they did) and to reconcile irregularities or inconsistencies they reflect within 60 business days of, the date you receive this request. Which they did not.

### The documents which must be provided upon request:

* Initial Loan Application and Final Loan Application (1003);
* Deed of Trust/All Addendums;
* Copy of Wet-inked Note I signed with All Endorsements and Riders;
* Copy of Loan Payment History – This must include all payments made, all fees incurred, any and all escrow account disbursements and how payments were applied, and all disclosures and rate sheets;
*All escrow analyses conducted on the account from the inception of the loan to the date of this letter;
* Truth-in Lending Statements and Disclosures;
*All loan servicing agreements between the loan servicer(s) and the loan originator, the note holder/lender, and/or trustees from inception of the loan to the date of this letter;
*All letters, statements, affidavits, and documents (including Limited Power of Attorney if applicable) sent to me by agents, attorneys, or representatives of your company;

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

* Itemization of Amount Financed;
* Good Faith Estimates;
* Estimated and Final Closing Statements (Final HUD 1);
* Appraisal;
* Title Report;
* Grant Deed(s);

RESPA, also requires:

*Documentation of all loss mitigation evaluations and actions taken on this mortgage loan;
*A full accounting of all money paid and received on this mortgage loan account from any third party sources, including agreements, contracts, and understandings with vendors that have been paid for by any charges on the account from the inception of the loan to the date of this letter;

*All questions submitted must also be provided to Plaintiff but Defendant failed to do so.

49)     Please note the "Commission" (Federal Trade Commission-FTC), through the "Fair Debt Collection Practices Act", has defined the term "creditor" as " **any person** who offers or **extends credit creating a debt** or to whom a **debt is owed**, but such **term does not include any person** to the extent that he receives an **assignment or transfer** of a **debt in default solely** for the purpose of **facilitating collection** of such debt for another."

50)     The offer of extending credit is the action of creating a debt. Debt is not an asset but is in fact a liability which has been determined by the United States Supreme Court to be illegal to lend credit as a bank. A bank must lend money. The money cannot be from the assets of a Bank, nor the deposits of a customer.(See GAAP, FAS and Modern Money Mechanics of the Federal Reserve of Chicago, publication)

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

51) To reiterate, a person can extend credit, not a corporation under what the FTC defines as a creditor extending credit. Note that the FAIR DEBT PRACTICES COLLECTION ACT did not state that a creditor lends money but rather extends credit and since this was not disclosed to myself or my wife, it leaves an error in the RESPA and TILA document disclosures, since there is more than a $100.00 error on the documents. If you have no true value consideration at risk, then you have no true meeting of the minds and assets at risk of loss, this makes the contract void ab initio. This means that all money received is usury and interest not just from the interest due but also from the principal allegedly owed. You cannot create a ledger entry from nothing simply to facilitate a fabricated risk of a loan with a reward of usury interest. In addition, **Defendant(s) are a servicing agent**, not the creditor. This may make Defendant(s) a third party debt collector and also makes Defendant(s) subject to the rules of the FDPCA.

52) To further define "debt" the FTC has stated the following "**any obligation or alleged obligation of a consumer to pay money** arising out of a transaction in which the **money, property, insurance** or **services** which are the subject of the transaction are primarily for personal, family or household purposes, whether or not such obligation has been **reduced to judgment**."

53) We must also make sure that the FTC considers Defendants a "debt collector" in order to assure that Plaintiffs are using the correct federal remedy. The FTC has defined debt collector as:

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

" any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For purpose of section 808(6), <u>such term also includes any person who uses</u> <u>any instrumentality of interstate commerce or the mails in any business the principal purpose of</u> <u>which is the **enforcement of security interests.**</u> The term does not include-(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor. (B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts; (C) any officer or employee of the United States or any State to the extent that collection or attempting to collect any debt is in the performance of his official duties; (D)any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt; (E) any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

was originated by such person; (iii)concerns a debt which was not in default at the time it was

obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a

commercial credit transacting involving the creditor."

> UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF MASSACHUSETTES 246
> B.R. 709; 298 2000 (GMAC is a "debt collector" within the statutory definition of the Fair Debt
> Collection Practices Act and a licensed debt collector).

54) All third party debt collectors include servicing companies and law firms who are

attempting to collect any alleged debt. _George W. Heintz v. Darlene Jenkins_, 514 U.S. 291, 115

S.Ct. 1489. When a third party debt collector contacts an alleged debtor, the collector **must** in the

**first communication or within five (5) days** thereafter furnish the alleged debtor with a

**dunning letter**. The dunning letter must inform the alleged debtor that the collector is attempting

to collect a debt and inform the alleged debtor that they have thirty (30) days to dispute the debt.

**15 USC 1692g, 1692g(a)(3)**. The alleged debtor has thirty (30) days to dispute the debt requiring

the collectors to furnish validation of the debt. **15 USC 1692G(b)**. **Validation of the debt can**

**either be a signed judgment order(not interlocutory order) or an accounting which is**

**signed and dated by the person responsible for maintaining the account general ledger**.

The validation was never properly provided, See _Spears v. Brennan, Pacific Concrete F.C.U. V._

_Kauanoe_, 62 Haw. 334, 614 P.2d 936 (1980), _GE Capital Hawaii, Inc. v. Yonenaka_ 25 P.3d

807, 96 Hawaii 32, (Hawaii App 2001), _Fooks v. Norwich Housing Authority_ 28 Conn. L. Rptr.

371, (Conn. Super.2000), and _Town of Brookfield v. Candlewood Shores Estates, Inc._ 513 A.2d

1218, 201 Conn.1 (1986). See also _Solon v. Godbole_, 163 Ill. App. 3d 845, 114 Ill. Dec. 890, 516

N. E.2d 1045 (3Dist. 1987).

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY**
**JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);**
**RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;**
**28 U.S.C. § 2201**

55) A Fiduciary assignment to settle and discharge the debt, a TILA notice of cancellation with revocation of power of attorney, a RESPA QWR and a counterclaim Negative Averment has been mailed to Defendant attention by way of Notary Presentment and Notary Protest per U.C.C. 3-505(a) and (1). Defendant had failed to timely reply which is grounds for dishonor by way of certificate U.C.C. 3-305 (b). Defendant's attention in this matter was mandatory.

56) It is clear with a preponderance of substantive evidence that such assignment and transfer was made just for that purpose alone, to facilitate collection of such debt for another.

57) That the Defendant filed a Civil Foreclosure Suite on September 4, 2009. Such letter was accepted for value and returned for value stating Plaintiff was exempt from levy. Defendant was again attempting to recontract with Plaintiff after Defendants multiple dishonors. Defendant might have had a cause of action at one time(if the contract was done lawfully) but has lost all rights to action afforded it. They have exhausted all administrative remedy by non-response prior to the foreclosure.

58) That on September 6, 2009, Plaintiff filed a Third Party Plaintiff Counterclaim suit In Admiralty in the form of a "Verified Affidavit of Negative Averment, Opportunity to Cure and Counterclaim".

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

59)     That the Defendants were given 21 days to A) Dismiss any and all claims against the Third Party Plaintiff with prejudice, restore any and all derogatory credit reporting and/or public findings, release any and all collateral/real estate liens in question on property, reimburse Third Party Plaintiff for all court costs, filing fees and expenses associated with said case. B) Pay all damages as indicated by the counterclaim contained herein with Real Money, Surrender any and all Public Hazard Bonds, other Bonds, Insurance Policies, 801k, CAFR Funds, etc., as needed to satisfy counterclaim herein, OR. C) Prove your claims against me by providing me with lawfully documented evidence that is certified true and correct, by (Officers of the Court), in their unlimited commercial liability, while under Oath, on and for the Official Record, under penalties of the law including perjury.

60)     That the Defendant failed to respond to an Admiralty Counterclaim within the time so granted from one of the People of the State of Illinois.

61)     That on September 11, 2009 the Plaintiff filed a U.C.C. FINANCING STATEMENT perfecting the lien established as an International Commercial Lien against the Defendant in the amount of $9,000,000.00.

62)     That the Defendant worked in collusion with the 18th Judicial Court, Judge Cerne, in circumventing the counterclaim and entering an interlocutory order and judgment causing a collateral attack against the Plaintiff even after the Defendant had defaulted by non-response. Creating a void judgment.

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

63)    That on June 1, 2010, the Plaintiff had perfected and filed a Land Patent Claim by

assignment and Declaration. Plaintiff also claimed Homestead Rights and recorded them with the

DuPage Recorder of Deeds.

64)    That after several failed attempts to stop the Sheriff sale and serve Sheriff Zaruba his

notice to cease and desist all collateral attacks, Plaintiff was forced to file Bankruptcy Protection.

Plaintiff's first bankruptcy was dismissed due to not receiving all the documents on time.

Plaintiff filed a second bankruptcy thereafter. On December 20, 2011, the Plaintiff needed to

protect his property with automatic stay by filing Bankruptcy and disputing the debt under

Schedule F as "Unsecured Non-Priority Debt" marked as "Disputed and Uncollected". That the

dispute is to the alleged claim of security interest that was made by the Defendants by way of

willful wanton acts in collusion with the 18th Judicial court.

65)    Demandant also filed a non bankruptcy claim as assigns of a land patent allodial/allodium

title which has been perfected and declared. Such claim is on the Schedule C of the Bankruptcy

form pursuant to. 735 5/8-1209 Patents for Land.

66)    Demandant has also filed a Homestead claim and declared such claim on the Schedule C

of the Bankruptcy form whereby debtor as defined claims a homestead that exceeds $136,875

pursuant to 735 5/12-901 and 906: Homestead, Real Property and Personal property. Such claim

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY**
**JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);**
**RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;**
**28 U.S.C. § 2201**

is for the full market value of said property. $620,000.00 Half of which rights and ownership are

Michele: of the house Di Cosola. *Wheeler vs Tolland Bank Conn. Dist Bankr Court 2000.*

67)     Demandant claimed the exemptions to which debtor is entitled pursuant to 11 U.S.C.

522(b)(3).

68)     Since Demandant filed a second filing of bankruptcy, stay was only good for 30 days.

Demandant filed a Motion for an Extension of Stay at the same time Demandant filed the

voluntary chapter 11 bankruptcy. The deputy clerk at the Bankruptcy Court would not provide

Demandant with a Judge that was to be assigned to the case. She stated that Demandant would

receive all that info in the mail. This prejudiced the Demandant from assigning a Motion date for

the Extension of Stay since Demandant did not know the Judges name yet to know the court

room or dates motions are heard.  In addition, the deputy clerk would not stamp the Motion. She

stated that all we needed was to submit everything to her and she would handle it. Deputy clerk

provided a one sheet document stating that Plaintiff filed Bankruptcy and said that was all we

needed and that Demandant would receive everything else in the mail.

69)     After 30 days, CODILIS filed for a Motion to confirm termination of stay giving

Demandant Paula Di Cosola only 3 days notice. Demandant was unable to attend at such short

notice so her husband Michele of the House Di Cosola filed an Objection to the Termination

Motion and appeared before the court to let the judge know that Demandant, Paula of the House

Di Cosola, was unable to attend due to short notice and her employment not allowing such leave.

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY
JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);
RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;
28 U.S.C. § 2201**

Stating also that CODILIS had never filed a proof of claim. Judge WEDOFF granted CODILIS's

motion and denied Demandant's Motion. The only words CODILIS stated smug were that **"it**

**was a matter of law."** Judge WEDOFF on record, stated that he had already spoken to a

Guardian ad Litem the day before and that he was ordering Demandant, Paula of the House Di

Cosola a Guardian due to her being incompetent. After Demandant filed an Objection with a

Motion to Vacate based on the above history, Judge WEDOFF denied the her motion to vacate

the confirmation of termination of stay. Demandant asked on record if she is still appointed a

Guardian ad Litem? The judge replied by stating "You lost that benefit".[transcripts will provide

exact wording].


70)     Alleged Creditors ("CITI" and "CODILIS") who are also hereinafter "Debt Collector(s)"

have collected a debt with no readily available evidence when challenged by way of validation of

debt per 15 U.S.C. § 1692g(b) within and up until this date any lawful "Validation of Debt" as a

matter of law.


       "Validation of the debt can either be a signed judgment order or an accounting

which is signed and dated by the person responsible for maintaining the account general ledger."


       The validation was never properly provided See *Spears v. Brennan, Pacific*

*Concrete F.C.U. V. Kauanoe,* 62 Haw. 334, 614 P.2d 936 (1980), *GE Capital Hawaii, Inc. v.*

*Yonenaka* 25 P.3d 807, 96 Hawaii 32, (Hawaii App 2001), *Fooks v. Norwich Housing Authority*

28 Conn. L. Rptr. 371, (Conn. Super.2000), and *Town of Brookfield v. Candlewood Shores*

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY**
**JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);**
**RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;**
**28 U.S.C. § 2201**

*Estates, Inc.* 513 A.2d 1218, 201 Conn.1 (1986). See also *Solon v. Godbole,* 163 Ill. App. 3d

845, 114 Ill. Dec. 890, 516 N. E.2d 1045 (3Dist. 1987).

71)     Demandant corrected the order which had both the motion to vacate the termination of

the extension of stay and the motion to vacate the guardian ad litem and made an amended order

to grant the vacate of the guardian ad litem. On March 23, 2011 Demandant, Michele Di Cosola,

dropped off to Judge WEDOFF's Law Clerk, Renu Shah, ("RENU") the new order for the vacate

of guardian ad litem. She had stated that she would call Demandant Michele Di Cosola the next

day about the order. The next day RENU contacted Demandant Michele Di Cosola and stated

that she would not accept the order since the judge denied the vacate. Demandant stated that the

judge did not deny the vacate but after a direct question from Plaintiff Paula Di Cosola stated

that she lost that benefit. RENU stated that Demandant can file an objection. Demandant

indicated that this was bias and prejudice. RENU stated that it was moot signing the order. It is

clear at this point that if the order was not given, Demandant would have been not granted the

vacate order and under F.R.C.P. still be declared as incompetent for not providing the order to

the judge. Judge WEDOFF's law clerk stated that Judge WEDOFF denied the order and said he

denied her motion in court. When Demandant, Michele stated that he did not deny it and that it

was a **"matter of law"** to sign this routine order, the clerk stated that the judge says its moot.

Again prejudicing Demandant(s) giving a **"matter of law"** only to the criminal attorney with no

right to be in court but not to the Demandant.

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY
JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);
RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;
28 U.S.C. § 2201**

72)     That to this date, the Defendant has failed to provide proof of claim but has been allowed to motion as a "Matter of Law"/Routine and Procedural Confirmation, that the Extension of stay for the second filing was terminated. Defendant has also failed to object to the Plaintiffs Schedule F dispute and or Schedule C Exemptions which shows a Land Patent, Homestead, Tenants in Common and Commercial lien exemption against said property.

73)     That the Plaintiff filed a Motion for an extension of stay the same day as the filing for the bankruptcy, but was told that the Motion was nowhere to be found and therefore, the Defendant was sustained in their Motion.

74)     That on February 8, 2011 the Plaintiff had filed a Motion for Avoidance, and to date, the Defendant has not responded to a Motion for Avoidance and has defaulted and perfected such avoidance claim.

75)     Alleged Creditor(s) has stipulated in its contract that they will use the uniform commercial code for both definitions and or remedy. Since Alleged Creditors have chosen there form of remedy as being the Uniform Commercial Code, they are in dishonor by way of Notary Protest, Notary Presentment, Tender of Payment, Proof of the Genuine wet ink original promissory note in its unaltered form, have separated the note from the mortgage causing bifurcation and have lost all standing, making the promissory note void ab initio, and failure to perform fiduciary appointment and or discharge of debt.

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

76)     That Judge WEDOFF did not stipulate a "Routine Motion"/"Procedural Motion" in favor

of the Plaintiff when the hearing had both parties present. That Judge WEDOFF stated on record

that he would not let Plaintiff get out of a mortgage. This again caused prejudice and bias in the

case against the Plaintiff. This also violated the ministerial duty of the Judge to perform a

Routine/Procedural Motion that has cured undisputed and unrebutted, as a matter of law.


77)     Judge WEDOFF under 28 U.S.C. 455 must recuse himself from the bench for such an act

but has failed to do so without instruction, again causing bias and prejudice against the Plaintiff.

Judge WEDOFF and Judge CERNE both are in violation of their oath 28 U.S.C. 453, 454, and

455.


78)     Alleged Creditor(s) CITIMORTGAGE and CITIBANK have lost any and all trustee

authority and or beneficiary authority. The promissory note that is based on statutory

presumption has been stamped "Pay to the Order of" which makes the Promissory Note "Void

Ab Initio". In addition, there is clear fraud which has been perpetrated on the court, the law

myself and the American People by way of "Willful Wanton Acts of Economic Treason with

collateral attack and Inland     Piracy being their main RICO crimes. This can be evidenced by

the following:


79)     The banks risk none of their own money. They create money out of thin air. Only God

can make something from nothing. (a quote from the Supreme Court). Through fractional reserve

banking, the alleged creditors have made 1 to 2.5 times the face value of the alleged loans which

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY
JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);
RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;
28 U.S.C. § 2201**

are really nothing more than ledger entries by the stroke of a key. The bank was paid when they

securitized the loan. The loan that the Demandant(s) provided to the alleged Creditors.

80)     The alleged Creditors sold the promissory note to investors and whereby an account

called a REMIC (Real Estate Mortgage Investment Conduit ) The banks are required to own up

to 10% of the REMIC for tax exempt purposes.  So when the market value of the REMIC goes

up, they profit from the appreciation of the asset. (i.e. Real Estate that has been collateralized by

way of Mortgage to guarantee the promissory note).

81)     REMIC in turn wraps these Mortgages into a Special Purpose Vehicles(SPV) for the

purpose of a straight tax pass through. The tax pass through goes to the beneficiaries of the

REMIC Stock which are the investors. There are thousands of investors and pools of assets(i.e.

properties via mortgages) that are traded owner after owner. There is no one real party of interest

since the beneficiaries to the mortgages are the stock holders, so there is no real injured party that

has standing to step forward and claim any damage. The mortgages were entered into a SPV

rendering the conversion of the mortgages(Assets) impossible to reverse and give back to the

servicer(i.e. CITIMORTGAGE and CITIBANK). Since the debt went bad in the eyes of the

investors/stock holders, they will sell the bad toxic assets (i.e. the promissory notes) back to the

original underwriter (i.e. CITIMORTGAGE and CITIBANK) for pennies on the dollar.

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY
JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);
RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;
28 U.S.C. § 2201**

82) Meanwhile, the stock holders write off the sale as a loss, toxic assets and then dip into the FDIC, TARP, the sale of your home and all other means of bailouts to justify their fraudulent loss.

83) Since the stock holders have written off the promissory note, the note is discharged. This means that the alleged creditors who are nothing more than servicers, have purchased bad debt and are hereinafter unsecured creditors and third party debt collectors subject to the FDCPA. Furthermore, they have lost any and all rights as Trustee on behalf of the beneficiaries since the REMIC was converted to a stock by way of SEC filing, rendering the alleged creditors with no authority once so ever to assign, execute and or collect. When they do collect, it is based on a Third Party Collector action. This is deceptive practices, predatory lending, securitization fraud, inland piracy and collateral attack. They have been quadruple enriched by the time they successfully steal your home though the public's ignorance of money mechanics and the law. Banks can not lend money. See Exhibit "A": Modern Money Mechanics of the Federal Reserve Chicago.

84) The alleged creditors are not the holders in due course, nor did they have the venue and jurisdiction to file in the local court. CITIMORTGAGE and CITIBANK have committed fraudulent acts of collateral attack and inland piracy. Demandant filed under Special Restricted and Limited Appearance sui juris. The prior courts and or creditors did not adjudicate and/or joinder the case and did not prove up jurisdiction and venue when challenged by way of demurrer. Since judgment is only final when the Sheriff sale is complete and when the judge

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

signs off on the final order of the Sheriff sale, no judgment has been perfected and the alleged

creditors cannot use such interlocutory order as a proof of claim but must enter a <u>hand written</u>

proof of claim showing an interest in the property, that they are the real injured party and true

creditor when the scheduling of such alleged creditor has been filed as disputed.

85) That the Defendant has committed securities fraud; fraud on the court, collusion, and

conspiracy, in addition to countless other charges, and has impersonated its self as a Secured

party Creditor, when in fact, they have no interest at all in the property, note, mortgage or claim.

All rights and remedies have been lost and exhausted.

86) Alleged Creditors have failed to provide the allonge to the promissory note when

requested.

87) Statutory presumption was and is challenged by Demandant(s) as an individual, and

executor of the estate, related to the alleged promissory note which does not exist and is not in

the possession of the alleged creditors as the "Holders in due Course" or as a real injured party

by way of unlawful collateral attack using a copy of promissory note and mortgage, alleging to

be the creditor with a phantom real injured party, under the Statutory presumption of evidence,

jurisdiction and venue against the real man and woman when common law is the law of the land.

The United States is a Federal Municipal Corporation foreign to the organic Illinois state

territory geographically as per the 41st Congress assembled 1871. All attorneys are BAR

(Barristers Accredited Registration) members and are mandated to file with the Department of

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY
JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);
RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;
28 U.S.C. § 2201**

Justice as a Foreign Registered Agent which has not been done by any of the alleged Creditor attorney's/agents. Additionally, I, Michele and I Paula-Joanne of the house Di Cosola, are protected under the Foreign Sovereign Immunities Act from collateral attacks and Inland piracy against our private property protected by way of land patent. I also am protected under positive law "American Jurisprudence."

88)     The Trial Court, Bankruptcy Court, or this court must not hereinafter assume a fact to be true from the alleged creditors in dispute, until such time as there is a preponderance (greater weight) of evidence which disproves or outweighs (rebuts) Demandant(s) Claim. Judge WEDOFF was prejudice and in error on denying Demandant(s) MOTION TO AVOID INTERLOCATORY ORDER AND LIEN. Demandant(s) feel that there will be no justice in the Bankruptcy Court or the Trial Court so entering an adversarial complaint in the Bankruptcy Court is moot. Each presumption is based upon a particular set of apparent facts paired with established laws, logic, reasoning or individual rights. A presumption is rebuttable in that it can be refuted by factual evidence. Demandant will submit to this court countless forms of evidence in our verified complaint that such alleged claims purporting to be creditors are nothing more than banksters committing economic treason on the American people. One can present facts to persuade the judge that the presumption is not true. The presumption that the original bankruptcy filing was in bad faith is also rebutted since Demandant is presumed innocent until proven guilty. All above rebuttable presumptions will be proven by way of my Trial by Jury petition in Demandant(s) claim. There is no absolute, conclusive or irrebuttable presumption in which rules of law and logic dictate that there is no possible way the presumption can be disproved from the

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

alleged creditors. Therefore there is no certainty on the alleged jurisdiction, venue, proof of claims, injured parties, and/or actions by the alleged creditors.

89) That the Defendant has knowingly filed a claim with unclean hands as to not being the true owner and holder in due course of the Genuine Wet Ink Promissory Note and Mortgage. Defendant(s) have committed unconscionable crimes of fraud, collusion, fraud in the intent, fraud on the court, racketeering and willful wanton acts of economic treason. Several Title 18 Crimes and RICO act activity. Fraud does not have a statute of limitation. F.R.C.P. R60(b)(3) and R60(d)(3).

90) That in addition to all the above remedies executed in good faith by Plaintiff, bifurcation has caused said alleged security interest of Defendant to be void ab initio.

91) That Defendant is only a Servicer of the Mortgage and not the beneficiary of the Promissory Note and Mortgage.

92) That Defendant has failed to discharge said loan after Defendant(s) have dishonored Plaintiff(s) by non contested, non rebutted, non responded to, cured and perfected: Debt Validation Letter; Notary Presentment; Notary Protest; Nihil Dicit Judgment; Notice of Cancellation pursuant to TILA; RESPA, Qualified Written Request(QWR); Negative Averment; Affidavit; Counterclaim; Request to Admit; Motion to Produce; Motion to Compel; Motion for Avoidance; Exemption Claim in Bankruptcy, Proof of Claim, Federal Land Patent Claim;

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

Homestead Rights Claim, Tenants in Common Claim, U.C.C. Procedures and Cease and Desist

Letter. Proof of Defendant(s) Collusion and RICO Act activity can be found in the following

definitions:

## DEFINING INVESTMENT VEHICLES OF INSTRUMENTS AND OWNERSHIPS

**"Pass-Through Certificate"- What Does *Pass-Through Certificate* Mean?**
Fixed-income securities that represent an undivided interest in a **pool of federally insured mortgages** put together by the Government National Mortgage Association (Ginnie Mae).

**Investopedia explains *Pass-Through Certificate***
Mortgage-backed certificates are the most common type of pass-through, where homeowners' payments pass from the original bank through a government agency or investment bank to investors.

**"Real Estate Mortgage Investment Conduit" (REMIC) - What Does *Real Estate Mortgage Investment Conduit - REMIC* Mean?**
A special purpose vehicle (SPV) that is used to **pool mortgage loans** and issue **mortgage-backed securities (MBS)**. Real estate mortgage investment conduits (REMIC) hold commercial and residential mortgages in **trust,** and issue interests in these mortgages **to investors**.

**Investopedia explains *Real Estate Mortgage Investment Conduit - REMIC***
Similar to collateralized mortgage obligations (CMOs), REMICs piece together mortgages into pools based on risk, and issue **bonds** or other **securities** to **investors.** These securities then **trade** on the secondary mortgage market.

**"Mortgage-Backed Security (MBS)"-What Does *Mortgage-Backed Security (MBS)* Mean?**
A type of **asset-backed security** that is secured by a mortgage or collection of mortgages. These securities must also be grouped in one of the top two ratings as determined by an accredited credit rating agency, and usually pay periodic payments that are similar to **coupon** payments. Furthermore, the **mortgage must have originated from a regulated and authorized financial institution.**

Also known as a **"mortgage-related security"** or a "**mortgage pass through".**

**Investopedia explains *Mortgage-Backed Security (MBS)***
When you invest in a mortgage-backed security **you are essentially lending money to a home buyer** or business. An MBS is a way for a smaller regional bank to lend mortgages to its customers without having to worry about whether the customers have the assets to cover the loan. Instead, the **bank acts as a middleman between the home buyer and the investment markets.**

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

**"MBS Pool Number"-What Does *MBS Pool Number* Mean?**
A number or alphanumeric character assigned to a **mortgage-backed security** (MBS) by the **issuer as an identifier of that security**. **Pool numbers are typically six digits in length.**

93)     Different issuers such as Freddie Mac, Fannie Mae and Ginnie Mae use different alpha characters as the initial digit in their pool numbers to identify the pool as their issue. For example, a Freddie Mac 30-year pool number might be D54321 while a Fannie Mae 30-year pool number might be F54321.

**Investopedia explains *MBS Pool Number***
**Mortgage-backed securities (MBS) traders frequently use pool numbers** (as opposed to **Cusip** numbers) to identify and trade securities as the pool number is more easily quoted, and the initial digit in the pool number frequently identifies the issuer. Those familiar with pool numbers might also be able to quickly distinguish between older and newer issues by the pool number.

This type of **security** is also commonly used to **redirect the interest and principal payments from the pool of mortgages to shareholders.** These payments can be further broken down into **different classes of securities**, depending on the riskiness of different mortgages as they are classified under the MBS.

**"Pass-Through Rate"-What Does *Pass-Through Rate* Mean?**
The rate on a **securitized asset pool** - such as a mortgage-backed <u>security</u> (MBS) - that is **"passed-through"** **to investors** once management fees and guarantee fees have been paid to the **securitizing corporation.** The pass-through rate (also known as the coupon rate for the MBS) will be lower than the interest rate on the individual securities within the offering.

**Investopedia explains *Pass-Through Rate***
For example, suppose that an agency takes two million dollars' worth of <u>mortgage</u> loans, each of which pays 6% interest, and turns them into a 5.5% mortgage-backed security. The 5.5% reflects the pass-through rate, and the agency takes the remaining 0.5% as a cut of the proceeds.

**The largest issuers of securitized assets are** the **Sallie Mae, Fannie Mae and Freddie Mac corporations.** While these companies are for-profit business, their guarantees are backed by the U.S. government, giving them high **credit ratings.**

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

**"Fannie Mae" - Federal National Mortgage Association" - FNMA-What Does *Fannie Mae - Federal National Mortgage Association - FNMA* Mean?** A government-sponsored enterprise (GSE) that was created in 1938 to expand the flow of <u>mortgage</u> money by creating a **secondary mortgage market**. Fannie Mae is a <u>publicly traded company</u> which operates under a congressional charter that directs Fannie Mae to channel its efforts into increasing the availability and affordability of homeownership for low-, moderate-, and middle-income Americans.

**Investopedia explains *Fannie Mae - Federal National Mortgage Association - FNMA*** Fannie Mae purchases and guarantees mortgages that meet its funding criteria. Through this process it **secures mortgages to form mortgage-backed securities (MBS)**. The market for Fannie Mae's MBS is extremely large and liquid. **Pension funds, insurance companies and foreign governments are among the investors in Fannie Mae's MBS**. In order to promote homeownership, Fannie Mae also holds a large portfolio of its own and other institution's MBSs, known as its retained portfolio. <u>To fund this portfolio, Fannie Mae issues debt known in the market place as **agency debt**.</u>

**Fannie Mae's "little brother" is Freddie Mac.** Together, Fannie Mae and Freddie Mac purchase or guarantee between 40% to 60% of all <u>mortgages</u> originated annually in the United States, depending upon market conditions and consumer trends.

**"Agency Debentures"-What Does *Agency Debentures* Mean?**
Debt issued by a Federal Agency or a government-sponsored enterprise (GSE) for financing purposes. **These types of debentures are not backed by collateral, but by the integrity and credit worthiness of the issuer**. Officially, agency debentures issued by a Federal Agency, such as the Tennessee Valley Authority, are <u>backed by the full faith and credit of the United States government</u>. Agency debentures issued by a GSE are backed only by that GSE's ability to pay.

**Investopedia explains *Agency Debentures***
The market place appears to believe that GSE Agency debentures carry an implicit guarantee from the United States government. <u>This is due to the GSE's direct borrowing ability from the U.S. Treasury</u> and the importance of the GSE's Congressional charters and missions.

The Agency debenture market is very large. At one point in the late 1990s outstanding <u>Agency debt comprised primarily of the **debt issued by Fannie Mae and Freddie Mac**</u> nearly surpassed the amount of debt issued by the U.S. Treasury.

Some feel the GSE's have an unfair funding advantage over publicly or privately held corporations, and that the amount of GSE debt and their corresponding investment portfolios <u>pose too large of risk to the entire U.S. financial system</u>. Others believe the role the GSEs play in promoting home ownership, for example, justify their funding advantage.

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

**"Agency Bond"-What Does *Agency Bond* Mean?**
A <u>bond</u> issued by a government agency. These bonds are not fully guaranteed in the same way as U.S. Treasury and municipal bonds.

**Investopedia explains *Agency Bond***
These bonds do not include those issued by the U.S. Treasury or municipalities. **They include such agencies as Fannie Mae, Freddie Mac, Sallie Mae and the Federal Home Loan Banks**.

**"Freddie Mac - Federal Home Loan Mortgage Corp"- FHLMC-What Does *Freddie Mac - Federal Home Loan Mortgage Corp - FHLMC* Mean?**
A **stockholder-owned**, **government-sponsored enterprise (GSE)** chartered by Congress in 1970 to keep money flowing to mortgage lenders in support of homeownership and rental housing for middle income Americans. The FHLMC **purchases, guarantees and securitizes mortgages to form mortgage-backed securities**. The mortgage-backed securities that it issues tend to be very liquid and carry a credit rating close to that of U.S. Treasuries. Also known as "Freddie Mac".

**Investopedia explains *Freddie Mac - Federal Home Loan Mortgage Corp - FHLMC***
Freddie Mac has come under criticism because its ties to the U.S. government allows it to borrow money at <u>interest rates</u> lower than those available to other financial institutions. With this funding advantage, it issues large amounts of debt (known in the market place as **agency debt** or **agencies**), and in turn purchases and holds a huge portfolio of mortgages known as its retained portfolio. Many people believe that the size of the retained portfolio poses a great deal of systematic risk to the entire U.S.

**"Government-Sponsored Enterprise" - GSE-What Does *Government-Sponsored Enterprise - GSE* Mean? <u>Privately held corporations</u>** with **<u>public purposes created by the U.S. Congress</u>** to reduce the cost of capital for certain borrowing sectors of the economy. Members of these sectors include students, farmers and **homeowners.**

**Investopedia explains *Government-Sponsored Enterprise - GSE***
GSEs carry the implicit backing of the U.S. Government, but they are not direct obligations of the U.S. Government. For this reason, these securities will offer a yield <u>premium</u> over Treasuries. Some consider GSEs to be stealth recipients of corporate welfare.

Examples of GSEs include: Federal Home Loan Bank, Federal Home Loan <u>Mortgage</u> Corporation (Freddie Mac), Federal Farm Credit Bank and the Resolution Funding Corporation.

**"Special Purpose Vehicle/Entity" (SPV/SPE)-What Does *Special Purpose Vehicle/Entity - SPV/SPE* Mean?**
1. Also referred to as a **"bankruptcy-remote entity"** whose operations are limited to the **acquisition** and **financing** of specific **assets**. The SPV is <u>usually a subsidiary company</u> with an asset/liability structure and legal status <u>that makes its obligations secure</u> even if the parent

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

company goes bankrupt.

2. A subsidiary corporation designed to serve as a counterparty for **swaps** and other **credit sensitive derivative instruments**. Also called a **"derivatives product company."**

**Investopedia explains** *Special Purpose Vehicle/Entity - SPV/SPE*
Thanks to Enron, SPVs/SPEs are household words. These entities aren't all bad though. They were originally (and still are) used to isolate financial risk.

A corporation can use such a vehicle to finance a large project without putting the entire firm at **risk**. Problem is, due to accounting loopholes, these vehicles became a way for CFOs to hide debt. Essentially, **it looks like the company doesn't have a liability when they really do.** As we saw with the Enron bankruptcy, if things go wrong, the results can be devastating.

Please note that the IRS has a section that governs such a transaction. Pursuant to **IRS CODE 860**: governing tax pass through for Special Purpose Vehicles.(straight tax pass through from the REMIC to the Special Purpose vehicle(SPV)) **Stock holders.**

**"Government National Mortgage Association"(Ginnie Mae/GNMA)-What Does** *Ginnie Mae - Government National Mortgage Association - GNMA* **Mean?** A U.S. government corporation within the U.S. Department of Housing and Urban Development (HUD). Ginnie May aims to:

1. Ensure liquidity for government-insured mortgages, including those insured by the Federal Housing Administration (FHA), the Veterans Administration (VA) and the **Rural Housing Administration (RHA)**.
2. Bring **investors' capital** into the market for these types of loans, so that the issuers have the means to issue more.

Most of the mortgages **securitized** as Ginnie Mae **mortgage-backed securities (MBSs)** are those guaranteed by FHA, which are typically mortgages for first-time home buyers and low-income borrowers.

**Investopedia explains** *Ginnie Mae - Government National Mortgage Association - GNMA*
Ginnie Mae neither issues, sells or buys pass-through mortgage-backed securities, nor does it purchase mortgage loans. It simply guarantees (insures) the timely payment of principal and interest from **approved issuers** (such as mortgage bankers, savings and loans, and commercial banks) of **qualifying loans**, such as those issued by the **FHA and RHA**.

Unlike its cousins Freddie Mac, Fannie Mae and Sallie Mae, Ginnie Mae is **not a publicly-traded company**. An **investor** in a *GNMA security* **will not know** who the underlying **issuer** of the mortgages is, but merely that the security is guaranteed by GNMA, which is backed by the full faith and credit of the U.S government, just like U.S. Treasuries.

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

**"Rural Housing Service" - RHS-What Does *Rural Housing Service - RHS* Mean?**
An administrative division within the U.S. Department of Agriculture that manages programs that focus on rural housing and community service facilities and are designed to improve the quality of life in U.S. rural communities. Perhaps one of the RHS's most well-known programs is its subsidized home loan program for people with low-to-moderate incomes who want to purchase, construct or rehabilitate a single-family rural home.

**Investopedia explains *Rural Housing Service - RHS***
The RHS also loans money to rural homeowners at an effective annual interest rate of 1%. Low-income rural residents age 62 and older may be eligible to receive home-repair grants of up to $7,500. The RHS also makes long-term subsidized loans for the construction of affordable rental or cooperative housing for underserved rural populations, such as those with low incomes, families, the elderly and the disabled.

**"Rural Housing Administration" gives "RHS Loan"-What Does *RHS Loan* Mean?**
A loan made by or guaranteed by the United States Department of Agriculture Rural Housing Service (RHS). The RHS lends both directly to low income borrowers in rural areas and guarantees loans that meet RHS requirements made by approved lenders. RHS mortgage loans may be part of a **pool of mortgages securitized** by the Government Nation Mortgage Association (Ginnie Mae).

**Investopedia explains *RHS Loan***
The RHS originates and guarantees more than home mortgages. The RHS operates loan programs for community services such as health care clinics, police and fire stations, schools, and childcare centers.

**"Derivative Product Company" (DPC) What Does *Derivative Product Company - DPC* Mean?** A special-purpose entity created to be a counter-party to financial derivate transactions. A derivative product company will often originate the derivative product **to be sold**; as well, they may guarantee an existing derivative product or be an intermediary between two other parties in a derivatives transaction.

**Investopedia explains *Derivative Product Company - DPC***
These companies are involved mainly in **credit derivatives**, such as **credit default swaps**, but may also transact in the interest rate, currency and equity derivatives markets. Derivative product companies cater mainly to other businesses that are **looking to hedge risks** that can include currency fluctuations, interest rate changes and **contract defaults**.

**"Credit Default Swaps"-What Does *Credit Default Swap (CDS)* Mean?**
A swap designed to **transfer the credit exposure** of **fixed income products** between parties.

**Investopedia explains *Credit Default Swap (CDS)***
The buyer of a credit swap receives credit protection, whereas the seller of the swap guarantees

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

the credit worthiness of the product. By doing this, the **risk of default is transferred** from the holder of the fixed income security **to the seller of the swap**.

For example, the buyer of a credit swap will be entitled to the **par value** of the **bond** by the seller of the swap, **should the bond default in its coupon payments**.

### "Mortgage Bond"-What Does *Mortgage Bond* Mean?
A **bond secured by a mortgage** on one or more assets. These bonds are typically backed by real estate holdings and/or real property such as equipment. In a **default situation, mortgage bondholders have a claim** to the underlying property and could sell it off to compensate for the default.

### Investopedia explains *Mortgage Bond*
Mortgage bonds **offer the investor a great deal of protection** in that the principal is secured by a valuable asset that could theoretically be sold off to cover the debt. However, because of this inherent safety, the average mortgage bond tends to yield a lower rate of return than traditional corporate bonds that are backed only by the corporation's promise and ability to pay.

94)     This means that the investors must attempt to lower the published interest rates so the

bond prices can go up in value. If the Note is dishonored, the investor may receive par value of

the bond when the originating Lender is forced with a credit default swap. This is why the

interest rates are at its lowest. Insiders that work for the bank on Wall Street have manipulated

the markets to make the interest rates low so FANNIE MAE and FREDDIE MAC can clean

house on the Credit Default Swap (bad note buyback guarantee from the originator lender) and

the par value of the bonds(When interest rates go down, bond prices go up.) This gives the

investors an all time high on their bond par value, causing the investors to cash in on their

Mortgage Backed Securities and calling the Bonds due when sold. This causes a crash in the

market since the banks are not solvent to cover such cash in.  In addition, the originator was

already paid for the note it sold, it has written off the debt as a loss, it has applied for TARP and

has claimed an insurance loss with FDIC and now it wants to take people's homes and cash in on

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

both the retail sale of the home and the deficiency of the REO purchase at the Trustee or Sheriff

sale. This in turns causes the home owner to lose all equity in their home, owe capital gains for

the deficiency of the loan judgment, become an indentured slave by way of wage garnishment

and or liquidation of assets. All by way of fraud!

## CONCLUSION

95)     Paragraphs 1 through 12, 13 through 23, 24 through 94 are included by reference as

though fully stated herein.

96)     It is at this point of the facts and definitions that it is with a preponderance of evidence

...substantive evidence, that this instrument(i.e. the mortgage) has been converted into a bond. A

bond is a security instrument registered with the SEC. The assets of the mortgage(i.e. the houses)

are forever locked into the security instrument, "Servicing Pool Agreement, REMIC and SPV,

which the investors/stockholders have been guaranteed by mortgage backed securities. Such

investors do not even know who the underlying originating Lender is. The mortgage and the

promissory note have been forever separated/bifurcated. The credit swap agreement allows for

the original Lender(ORIGINATOR) to purchase back the security backed promissory note and

not the mortgage or its assets. The promissory note is purchased back from the originating

Lender because it was guaranteed by the Lender via CDS(credit default swap.) This buy back

was after the investors had been 60 days with no payment collected. This forces a buyback of the

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY
JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);
RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;
28 U.S.C. § 2201**

promise to pay, but the mortgage itself is forever converted into a security instrument which also leaves the beneficiary forever unknown due to the bond holders trading bonds on a daily basis and leaves the promissory note without security.

97)     This in turn causes bifurcation since the note and mortgage are forever separated causing a collapse, discharge and void  in the promissory note.  The note was also written off by the investors causing another collapse and discharge of the note. This also means the Lender is not the Lender but is in fact a third party debt collector attempting to collect an alleged bad debt and unsecured debt, as a servicer of the debt. Any attempt to assume that they are a secured party is pure fraud on the court, on the American people and on the case itself. Not even the investors can sue even if it was only one investor since the mortgage cannot survive without the promissory note.

98)     Once an asset has been sold under FAS 140, the lender forever loses control of the asset. in other words, they no longer own or control your loan. They merely act as a servicer for your loan, with the proceeds going directly into the REMIC and SPV to be distributed to the shareholders.

99)     U.S.C. Code Title 12, Banks and Banking, Part 226- Truth in Lending (Regulation Z) Codified laws of banking. It defines <u>who a Lender is,</u> and <u>what the rights of a servicer are.</u> Specifically, it refers in 226(a) 1 that **<u>a servicer is not treated as a owner of the obligation</u>**.

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

(a) Scope. The disclosure requirements of this section apply to any covered person except as otherwise provided in this section. For purposes of this section.(1) A **"covered person"** means any person, as defined in 226.2(a)(22), that <u>becomes the owner of an existing mortgage loan by acquiring legal title to the debtor obligation</u>, whether **through a purchase, assignment or other transfer**, and <u>who acquires more than one mortgage loan in any twelve month period.</u> For purposes of this section, **a servicer** of a mortgage loan **shall not be** <u>treated as the owner</u> of the obligation if the servicer holds title to <u>the loan or it is assigned to the servicer</u> <u>solely for the administrative convenience of the servicer in servicing the obligation.</u>

100)     Additionally, the Mortgage/Deed of Trust carries on its face a particular loan number which subsequent documents have never correctly duplicated.

101)     Statistically, CITI has no chance of being the beneficiary based on the documents in the recorder's office showing MERS, as an unauthorized trustee illegally transferring the assignment of a mortgage in a REMIC and SPV that has been bifurcated causing securitization fraud. However, statistics are not how a true beneficiary should be determined, rather, that is based on the Note and the Note alone.

102)     In an attempt to support its claim to an interest in the Note, CITI attaches to its original complaint, a copy of Mortgage and Promissory Note without the proof of Assignment of Mortgage and the Allonge of the Promissory Note itself. Purporting that CITI is both the beneficiary and real party of interest of both the Promissory Note and the Mortgage/Deed of

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

Trust, but are purporting to transfer such claim from CITI to MERS to CITI again, when MERS

has no interest or authority in the Note and or Mortgage to transfer as described herein.

103)    There can be no beneficial ownership in the Mortgage/Deed of Trust as it is nothing more

than a security for a promissory note. As such, MERS could not transfer any interest in the

Mortgage/Deed of Trust to another.  The only interest that exists in this mortgage loan is the

beneficial interest in the promissory note and the record is deficient in demonstrating who that

person is or who that person's agent, if any, is. The creditor has not demonstrated standing, but

instead has demonstrated alleged statutory presumption which is also challenged.

104)    Defendant(s)/Alleged Creditor(s) need to stipulate the nature of their ownership of the

note. What is the true nature of the Negotiable Instrument(Promissory Note)?

105)    In Carpenter v. Longan, 16 Wall. 271, 83 U.S. 271, 21 L.Ed. 313 (1872), the U.S.

Supreme Court stated "The note and mortgage are inseparable, the former as essential, the latter

as an incident. An assignment of the note carries the mortgage with it, while an assignment of the

latter alone is nullity."

106)    Stay-relief requested in the Bankruptcy Court are governed by FED. R. BANKR. P.

4001(a)(1), to which FED. R. BANKr. P. 9014 is applicable. Rule 9014, in turn, incorporates

Rule 7017, which makes FED. R. Civ. P. 17 applicable ("[a]n action must be prosecuted in the

name of the real party in interest.";). The standing doctrine "involves both constitutional

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY
JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);
RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;
28 U.S.C. § 2201**

limitations on federal court jurisdiction and prudential limitations on its exercise." *Kowalski v. Tesmer,* 543 U.S. 125, 128-29, 125 S. Ct. 564, 160 L. Ed. 2d 519 (2004) (quoting Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2D 343 (1975)).

107)    Constitutional standing under Article III requires, at a minimum, that a party must have suffered some actual or threatened injury as a result of the Defendant's conduct, that the injury be traced to the challenged action, and that it is likely to be redressed by a favorable decision. (Valley Forge Christian Coll. v. Am. United for Separation of Church and State, 454 U.S. 464, 472, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982) (citations and internal quotations omitted)). Beyond the Article III requirements of injury in fact, causation, and redressibility, the creditor must also have prudential standing, which is a judicially-created set of principles that places limits on the class of persons who may invoke the courts' powers. (Warth v. Seldin, 422 U.S. 490, 499, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)). As a prudential matter, a plaintiff must assert "his own legal interests as the real party in interest". (Dunmore v. United States, 358 F. 3d 1107, 1112 (9th Cir. 2004), as found in FED R. CIV. P. 17, which provides "[a]n action must be prosecuted in the name of the real party in interest.") Defendants had not done so in both the trial court or the bankruptcy court.

108)    In re Mitchell, Case No. BK-S-07-16226-LBR (Bankr.Nev. 3/31/2009 (At page 10) the Court found that "MERS does not have standing merely because it is the alleged beneficiary under the deed of trust. It is not a beneficiary and, in any event, the mere fact that an entity is a named beneficiary of a deed of trust is insufficient to enforce the obligation." In *Maisel,* the

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

Bankruptcy Court for the District of Massachusetts found that a <u>lender did not have standing to seek relief from the automatic stay because it did not have an interest in the property</u> at the time it filed its motion for relief. 378 B.R. 19, 22 (2007).

109)    Transfer of mortgage paper may be made outright (sale) or by pledge (as security for a loan to the transferor.). In either event, to perfect the transfer, the transferor should physically deliver the note to the transferee. Without a physical transfer, a sale of the note could be invalidated as a fraudulent conveyance (under Civil Code § 3440), and a transfer in pledge could be invalidated as unperfected.   (California Mortgages and Deeds of Trust, and Foreclosure Litigation, by Roger Bernhardt, Fourth Edition, section 1.26) One without a pecuniary interest in the Mortgage Loan is not an obligee under the debt and, thus, has no legal standing to foreclose ab initio. (Walkins v. Bryant (1891) 91C 492, 27 P 77)

110)    The Note in this case is not a bearer instrument, but is an instrument payable to a specifically identified person. Illinois Com. Code Statutes 910 ILCS section 3-109 states:

> (a) A promise or order is payable to bearer if it is any of the following:
>
> > (1) States that it is payable to bearer or to the order of bearer or otherwise indicates that the person in possession of the promise or order is entitled to payment
> > (2) Does not state a payee
> > (3) States that it is payable to or to the order of cash or otherwise indicates that it is not payable to an identified person.
>
> (b)A promise or order that is not payable to bearer is payable to order if it is payable (1) to the order of an identified person or (2) to an identified person or order. A promise or order that is payable to order is payable to the identified person.

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

(c)An instrument payable to bearer may become payable to an identified person if it is specially indorsed pursuant to subdivision (a) of Section 3-205. An instrument payable to an identified person may become payable to bearer if it is indorsed in blank pursuant to subdivision (b) of Section 3-205.

A promissory note that is payable to a specifically identified person is not transferred merely by possession, instead, transfer requires that it be indorsed. Illinois Com. Code. 810 ILCS 3-201 states:

(a) "Negotiation" means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder.

(b)Except for negotiation by a remitter, if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its endorsement by the holder. If an instrument is payable to bearer, it may be negotiated by transfer of possession alone.

An endorsement is not made by purchasing a note, or by purchasing a debt, or by an assignment, instead, an endorsement is made by the signature of the specifically identified person to whom the note is owed. Illinois Com. Code 810 ILCS Section 3-204 states:

(a)"Endorsement" means a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of (1) negotiating the instrument, (2) restricting payment of the instrument, or (3) incurring endorser's liability on the instrument, but regardless of the intent of the signer, a signature and its accompanying words is an endorsement unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than endorsement. For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument.

Allodial title has not been produced as part of the promissory note in the proof of claim.

(b) "Endorser" means a person who makes an endorsement.
(c) For the purpose of determining whether the transferee of an instrument is a holder, an endorsement that transfers a security interest in the instrument is effective as an unqualified endorsement of the instrument.
(d) If an instrument is payable to a holder under a name that is not the name of the holder, endorsement may be made by the holder in the name stated in the instrument or in the holder's name or both, but signature in both names may be required by a person paying or taking the instrument for value or collection.

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

111) If one bought a note and intends to enforce it, but the note does not carry the endorsement of the payee, that person can bring an action in court to specifically enforce the right to an endorsement. Then, once that is done, the creditor can enforce the note against its maker. Illinois Com Code section 810 ILCS Section 3-203 states:

> (a) An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.
> (b) Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in **fraud** or **illegality** affecting the instrument.
> (c) Unless otherwise agreed, if an instrument is transferred for value and the transferee does not become a holder because of lack of endorsement by the transferor, the transferee has a specifically enforceable right to the unqualified endorsement of the transferor, but negotiation of the instrument does not occur until the endorsement is made.
> (d) If a transferor purports to transfer less than the entire instrument, negotiation of the instrument does not occur. The transferee obtains no right under this division and has only the rights of partial assignee.

Note that the blank signature promissory note signed by the VP Janet Sims, does not have the signature of the other party anywhere. Both parties must sign, but who is the other Party?

112) The promissory note in this case was made payable to CITIMORTGAGE, INC.. No record documents show that it has been endorsed to MERS or any other named entity. The Mortgage/Deed of Trust states that CITIMORTGAGE, INC. is the beneficiary of it. No record documents suggests that CITIMORTGAGE, INC. transferred its beneficial interest in the Mortgage/Deed of Trust to MERS, who is also the nominee and receiver payee of all payments made on the Promissory Note. However, record documents do suggest that CITI has reclaimed an interest in the Mortgage/Deed of Trust, by unlawful assignment from MERS back to CITI.

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

113)    MERS was a Nominee on the Mortgage. The term "nominee" was defined in *Schuh Trading Co v Comm'r of Internal Revenue,* 95 F 2d 404, 411 (CA 7, 1938), as follows:

"The word nominee ordinarily indicates one designated to act for another as his representative in a rather limited sense. It is used sometimes to signify an agent or trustee. It has no connotation, however, other than that of acting for another, or as the grantee of another. . . ."

114)    The recordation in the Recorder of Deeds does not indicate that MERS was a "Nominee" or "Nominee for identified principle". Instead, it states that MERS owned the mortgage rights and transferred them back to CITI. This is not possible since the mortgage is stuck in a Mortgage Backed Security, REMIC and SPV.  Additionally, the Mortgage states that *"MERS is acting solely as a nominee for Lender"* A nominee can only act as a representative and/or trustee for another in a limited capacity as stated in the Commissioner of the IRS citation. So how did they own the Mortgage then transfer it back  when they never owned it in the first place? Since a REMIC (Real Estate Mortgage Investment Conduit) was created, Fannie Mae and Freddie Mac were able to apply for a SEC Mortgage Backed Security. This meant that all interest, authority and power as trustee(MERS) was forever lost in the rights and remedies of the Mortgage and the Note.  When the Note was in alleged default, a CDS(Credit Default Swap) was required from the Originator(CITI), causing CITI to purchase back a bad note as a Third Party Unsecured Debt Collector. They were never able to purchase the Mortgage from the true beneficiaries and investors. CITI then used MERS to fabricate the lawful transfer of mortgage by having MERS assign a Mortgage they had no right, authority or interest in any longer since bifurcation caused

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

the note and the mortgage to collapse and be void ab initio. Meanwhile, the Promissory Note is

lost or destroyed simply to cover the securitization fraud that CITI was perpetrating since they

only had a copy of the original note that was already discharged. Welcome to the collapse of the

real estate economy or what Demandant calls the true "Weapons of Mass Destruction". CITI

never recorded the assignment of the original mortgage to MERS so MERS can later assign the

Mortgage back to CITI so as to execute a fraudulent foreclosure. The movie "Inside Job", which

won academy awards this year, can go into great detail on this prefabricated premeditated crime

which I would also call "Instruments of Mass Destruction(IMS-Demandant's phraseology).

115)   CITI and MERS  interest - if any - flow from a REMIC and SPV, which in turn has given

FANNIE MAE and FREDDIE MAC investment beneficial interest, CITI and MERS received no

rights to the promissory note since no record of such was recorded. The assignment of MERS

back to CITI is evidence that CITI does not have an interest of a security instrument held by

investors/stockholders, who are the real beneficiaries and real parties of interest. CITI and MERS

are nothing more than trustee(s) of a Trust that no longer has authority or rights to the

REMIC(Real Estate Investment Conduit), Special Purpose Vehicle(SPV), and or Mortgage

Backed Security(MBS).

116)   If they have acquired such rights from a Credit Default Swap(CDS), they are only

unsecured debt rights on an already void, written off and discharged note that hold no interest in

the Mortgage itself since it is forever locked into a security fixed income instrument and from

thereinafter, bifurcation of the promissory note and the mortgage has occurred.

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY
JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);
RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;
28 U.S.C. § 2201**

117)    If CITI and or MERS, is going to demonstrate an equitable assignment of the note, it must

first show that CITI and MERS had rights to the unendorsed Note which it could assign to MERS

and or CITI.


118)    However, the terms and provisions of the CITI mortgage expressly refute the notion that

CITI owned or held the note at inception. The mortgage was not countersigned by the original

note holder/alleged lender (CITI) such as to give MERS any rights or interests in the note. As

well the Note itself admits of no rights or interest in MERS. Only the Debtor signed the mortgage

and it is indisputable that he cannot award, grant or otherwise deign to transfer the rights of his

obligee, the note holder, to another. Indeed, the mortgage granted no power or authority to CITI;

and or MERS (a mere unauthorized and powerless trustee and or agent holding only the lien, not

the note) to sell or transfer the note or mortgage or to assign its duties as trustee and or sue in the

name of the original lender who has already assigned all interest(CITI) in a REMIC, SPV and

MBS.


119)    Since the Note was not indorsed to MERS or back to CITI, they didn't take the Note

pursuant to negotiation under the U.C.C. That left MERS with taking whatever rights CITI had

under the mortgage only and not from the promissory note. MERS has only transferred any lost

rights from the TILA Notice of Right To Cancel, entered by Michele and Paula Joanne of the

House Di Cosola to CITI as an unauthorized trustee. CITI has not received any form of

assignment of the promissory note and therefore has no rights. In addition, CITI has lost any

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY
JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);
RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;
28 U.S.C. § 2201**

rights it may have had in the default order. They have also lost any rights to act as the real injured party since the assignment of the Mortgage to the Certificate holders is substantive evidence of their lack of standing in the subject matter jurisdiction and or cause of action.

120)    In Carpenter v. Longan, 16 Wall. 271, 83 U.S. 271, 21 L.Ed. 313 (1872), the U.S. Supreme Court stated "The note and mortgage are inseparable, the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is nullity."

121)    An obligation can exist with or without security. With no security, the obligation is unsecured but still valid [unless void]. A security interest, however, cannot exist without an underlying existing obligation. (Hensley v. Hotaling (1871) 41 C 22; Turner v. Gosden (1932) 121 CA 20, 8 P.2d 505; Lee v. Joseph (1968) 267 CA 2d 30, 72 CR 471) It is impossible to define security apart from its relationship to the promise or obligation it secures. (Civil Code §§§ 2872, 2909, 2920; California Mortgage and Deeds of Trust, and Foreclosure Litigation, by Roger Bernhardt, Fourth Edition, § 1.11) The obligation and the security are commonly drafted as separate documents - typically a Promissory Note and Mortgage/Deed of Trust. If the creditor transfers the note but not the mortgage/deed of trust, the transferee receives a secured note; the security follows the note, legally if not physically. (Civil Code § 2-936; Seidell v. Tuxedo Land Co. (1932) 216 c 165, 13 P.2d 686. Lewis v. Booth (1953) 3 C. 2d. 345, 44 P.2d 560) (endorsement of note transferred deed of trust). If the transferee is given the mortgage/deed of trust without the note accompanying it, the transferee has no meaningful rights except the

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

possibility of legal action to compel the transferor to transfer the note as well, if such was the agreement. (Kelley v. Upshaw (1952) 39 C.2d 179, 246 P.2d 23; Polhemus v. Trainer (1866) 30 C 685)

122)     Consequently, when one transferee receives the note and another receives the mortgage/deed of trust, the one holding the note prevails, regardless of who first received a transfer. Adler v. Sargent (1895) 109 C. 42, 41 P. 799. (California Mortgages and Deeds of Trust, and Foreclosure Litigation, by Roger Bernhardt, Fourt Edition, section 1.25)

123)     Transfers of mortgage paper may be made outright (sale) or by pledge (as security for a loan to the transferor.) In either event, to perfect the transfer, the transferor should physically deliver the note to the transferee. Without a physical transfer, a sale of the note could be invalidated as a fraudulent conveyance ( under Civil Code § 3-440), and a transfer in pledge could be invalidated as unperfected (under Com Code §§ 9-313 and 9-314). (California Mortgages and Deeds of Trust, and Foreclosure Litigation, by Roger Bernhardt, Fourth Edition, section 1.26) One without a pecuniary interest in the Mortgage Loan is not an obligee under the debt and, thus has no legal standing to foreclose ab initio. (Watkins v. Bryant (1891) 91C 492, 27 P 77)

124)     "Where the mortgagee has 'transferred' only the mortgage, the transaction is a nullity and his 'assignee' having received no interest in the underlying debt or obligation, has a worthless piece of paper." (4 RICHARD R. POWELL, POWELL ON REAL PROPERTY, § 37.27[2](2000); In re Mitchell, Case No. BK-S-07-16226-LBR (Bankr. Nev. 3/31/2009) (At

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

page 12) MERS website admits at pages 10, 20, 22, 26, 34, 38, 40, 42, 44, 46, 62, 68, 72, 76, 78, 88, 89, 99:

125)    MERS stands in the same shoes as the **servicer** to the extent that <u>it is not the beneficial owner of the promissory note.</u> An investor, <u>typically a **secondary market investor**</u>, will be the **ultimate owner of the note**. (fn)

> Foot Note:
> Even though the servicer has physical custody of the note, custom in the mortgage industry is that the investor (Fannie Mae, Freddie Mac, Ginnie Mae or a private investor) owns the beneficial rights to the promissory note.

126)    In the consolidated cases of In re Foreclosure Cases, 521 F. Supp. 2D 650, 653 (S.D. Oh. 2007), a standing challenge was made and the Court found that there was no evidence of record that New Century ever assigned to MERS the promissory note or otherwise gave MERS the authority to assign the note.  Beginning with this case, courts around the country stared to recognize that MERS had no ownership in the notes and could not transfer an interest in a mortgage upon which foreclosure could be based.

127)    In LaSalle Bank NA v. Lamy, 824 N.Y.S. 2d 769 (N.Y. Supp. 2006), **the Court denied a foreclosure action by an assignee of MERS on the grounds that MERS itself had no ownership interest in the underlying note and mortgage.** In the case of In re Mitchell, Case No. BK-S-07-16226-LBR (Bankr. Nev. 2009), the Court stated "In order to Foreclose, MERS

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

must establish there has been a sufficient transfer of both the note and deed of trust, or that it has

authority under state law to act for the note's holder." (At page9) The Court found that MERS has

no ownership interest in the promissory note. The Court found that though MERS attempts to

make it appear as though it is a beneficiary of the mortgage, it in fact is not a beneficiary. The

Court stated "But it is obvious from the MERS' "Terms and Conditions" that **MERS is not a**

**beneficiary as it has no rights whatsoever to any payments, to any servicing rights, or to any**

**of the properties secured by the loans.** To reverse an old adage, if it doesn't walk like a duck,

talks like a duck, and quacks like a duck, then it's not a duck." (At page 7) MERS Terms and

Conditions say this:


*"MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a*

*nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to*

*time. MERS shall have no rights whatsoever to any payments made on account of such mortgage*

*loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties*

*securing such mortgage loans. MERS agrees not to assert any rights (other than rights specific*

*din the Governing Documents) with respect to such mortgage loan or mortgaged properties.*

*References here in to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and*

*beneficiary under a deed of trust and any other form of security instrument under applicable*

*state law."*

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY**
**JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);**
**RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;**
**28 U.S.C. § 2201**

128)     In the case of In re Vargas, 396 B.R. 511, 520 (Bankr. C.D. Cal., 2008), the Court stated:

*"MERS is not in the business of holding promissory notes".*(fn 10:MERS, Inc. is an entity whose

sole purpose is to act as mortgagee of record for mortgage loans that are registered on the MERS

System. This system is a national electronic registry of mortgage loans, itself owned and operated

by MERS, Inc.'s parent company, MERSCORP, Inc.)

129)     In the case of In re Sheridan, Case No. 08-20381-TLM (Bankr. Idaho, 2009) MERS

moved for relief from the stay. The Court stated that MERS "Counsel conceded that MERS is

not an economic "beneficiary" under the Deed of Trust. It is owned and will collect no money

from Debtors under the Note, nor will it realize the value of the Property through foreclosure of

the Deed of Trust in the event the Note is not paid." The Court stated "Further, the Deed of

Trust's designation of MERS as "beneficiary" is coupled with an explanation that "MERS is

acting solely as nominee(servicer) for Lender and Lender's successors and assigns." The Court

stated "Even if the proposition is accepted that the Deed of Trust provision give MERS the

ability to act as an agent ("nominee/trustee/servicer") for another, it acts not on its own account.

**Its capacity is representative."**

130)     In Landmark National Bank v. Kesler, 216 P.3D 158 (Kansas, 2009), the Kansas Supreme

Court extensively analyzed the position of MERS in relation to the facts in that case and other

non-binding court cases and concluded that MERS is only a digital mortgage tracking service. (At

page 168) The Court recited that MERS never held the promissory note, did not own the

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY
JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);
RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;
28 U.S.C. § 2201**

mortgage instrument (though the documents identified it as "mortgagee" and the Recorder of

Deeds fails to report the MERS as a Nominee) since it was sold to the investors/stockholders),

that it did not lend money(no Lender does these days...illegal..), did not extend credit, is not owed

any money(they sold the note day one) by the mortgage debtors, did not receive any payments

from the borrower, suffered no direct, ascertainable monetary loss as a consequence of the

litigation(CITI) selling the mortgage and the promissory note makes them whole from day one

and consequently, has no constitutionally protected interest in the mortgage loan.


131)    Christopher L. Peterson, Associate Professor of Law, University of Florida, testified at a

hearing before the U.S. Senate Committee on Banking, Housing, and Urban Affairs

Subcommittee on Securities, Insurance, and Investment and stated:


> *"MERS is merely a document custodian... The system itself electronically tracks ownership
> and servicing rights of mortgages.. The parties obtain two principal benefits from attempting to
> use MERS as a "mortgagee of record in nominee capacity." First, under state secured credit laws,
> when a mortgage is assigned, the assignee must record the assignment with the county recording
> office, or risk losing priority vis-a-vis other creditors, buyers, or lienors. Most counties charge a
> fee to record the assignment, and use these fees to cover the cost of maintaining the real property
> records. Some counties also use recording fees to fund their court systems, legal aid
> organizations, or schools. **In this respect, MERS' role in acting as a mortgagee of record in
> nominee capacity is simply a tax evasion tool.** By paying MERS a fee, the parties to a
> securitization lower their operating costs. The second advantage MERS offers its customers
> comes later when homeowners fall behind on their monthly payments. In addition to its document
> custodial role, and its tax evasive role, MERS also frequently attempts to bring home foreclosure
> proceedings in its own name, or to reassign the loan to a servicer or the originator to bring the
> foreclosure."*


132)    R.K. Arnold, Senior Vice President, General Counsel and Secretary of Mortgage

Electronic Registration Systems, inc., stated:

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY
JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);
RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;
28 U.S.C. § 2201**

*"MERS will act as mortgagee of record for any mortgage loan registered on the computer system MERS maintains, called the MERS System. It will then track servicing rights and beneficial ownership interest in those loans and provide a platform for mortgage servicing rights to be traded electronically among its members without the need to record a mortgage assignment in the public land records each time.... Members pay annual fees to belong and transaction fees to execute electronic transactions on the MERS System... A mortgage note holder can sell a mortgage note to another in what has become a gigantic secondary market...* <u>*For these servicing companies to perform their duties satisfactorily,*</u> **<u>the note and mortgage were bifurcated.</u>** *The investor or its designee held the note and named the servicing company as mortgagee, a structure that became standard...When a mortgage loan is registered on MERS System, it receives a mortgage identification number (MIN). The borrower executes a traditional paper mortgage naming the lender as mortgagee, and the lender executes an assignment of the mortgage to MERS. Both documents are executed according to state law and recorded in the public land records, making MERS the mortgagee of record. From that point on, no additional mortgage assignments will be recorded because MERS will remain the mortgagee of record throughout the life of the loan... MERS keeps track of the new servicer electronically and acts as nominee for the servicing companies and investors. Because MERS remains the mortgagee of record in the public land records through the life of a loan, it eliminates the need to record later assignments in the public land records. Usually, legal title to the property is note affected again until the loan is paid and the mortgage is release. (R.K. Arnold, Yes, There is Life on MERS, Prob. & Prop., Aug. 1997, at p.16), http://www.abanet.org/genpractice/magazine/1998/springbos/arnold.html)"*

Subprime Mortgage Market Turmoil: Examining the Role of Securitization, http://banking.senate.gov/public/index.cfm?FuseAction=Files,View&FileStore_id=4f40c1b9-cc5b-4752-ba8f-0c14afc44884. (at page 6-8)

133)     Courts around this country are clearly recognizing that original Lender who has assigned

the promissory note, the servicers, agents, trustees, nominees, custodians and the like, either by

transfer of mortgage/deed of trust only and or bifurcation, conversion, novation and the like, are

not the owner of the promissory note and that it is also only a mortgagee in name alone and have

no beneficial interest in the mortgage instrument and promissory note as one. Landmark National

Bank v. Kesler, 216 P.3D 158 (Kansas, 2009); Mortgage Electronic Registration System, Inc. v.

Southwest Homes of Arkansas, 08-1299(Ark 3/19/2009)

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

134)    Alleged Debtor does not contend that he didn't obtain a mortgage loan. This is not the

subject matter at hand. Debtor contends that the real party in interest has not come forward and

the creditor lacks standing, that TILA cancelled any reminisce of a loan and all rights of interest

Defendant(s) may have had are forever lost on countless violations and fraud.

135)    That as of this 4th Day of April, 2011, a TILA complaint, in lieu of a Bankruptcy

Adversarial Complaint has been entered against said Defendants.

136)    That Defendants, have exhausted all administrative remedy and are therefore in contempt

of court entering a motion or confirmation or even showing up to court and are committing an

illegal act of fraud on the court even attempting to continue sale and confirmation of sale on an

interlocutory order/judgment that is void.

## RELIEF REQUESTED

137)    Demandant(s) request the following relief:

A)    Permanent Injunctive Relief against the Defendant(s), alleged creditor, staff and

collection agencies and against such interlocutory order/void judgment entered in error by the

18th Judicial court. Temporary Injunctive Relief against the Bankruptcy Court and the Sheriff

and his staff of DuPage County until substantive evidence of a proof of claim from Defendant and

or a Permanent Injunctive Relief can be replaced in lieu against the same.

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY
JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);
RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;
28 U.S.C. § 2201**

B) Void such interlocutory order/judgment from the 18th Judicial Court as fraudulent and or in error.

C) Report to all major credit reporting agencies as to the correction of misinformation of derogatory credit showing no such defaults or fault against the Demandant9s).

D) Grant court assistance in the attachment of Defendant(s) assets per the TILA punitive/tort penalties of times three of the amount of the loan claimed with past due interest, penalties, attorney fees and court costs, and the Notary Public Nihil Dicit Judgment by way of confession of judgment, both in the Amount of $5,000,000.00 lawful money plus interest, court costs, fees and expenses related to this instant case and all prior cases related to the subject matter.

E) Any Sanctions as the court may deem necessary to prohibit such fraud on the public again by such Defendant(s).

F) Set-off and/or Discharge of alleged debt against Demandant(s) and their property.

G) Release of alleged fraudulent liens and notices of Lis Pendens recorded with the recorder of deeds against said Demandant(s) and their property. Such relief shall be ordered as a Void Judgment.

H) Declaratory Judgment in favor of the Demandant(s) or Trial by Jury of our Peers of 12 in a Court of Record at Common Law.

I) For such additional or alternative relief as may be just and proper.


WHEREFORE, It is in the interests of all parties, as well as the public, for this Court to sustain Demandant's Motion and to issue a Permanent Injunctive Relief staying the enforcement of any Sheriff sale pending this Court's ruling on Demandant(s) challenge to the Borrower-in-fact's lack

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b); RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38; 28 U.S.C. § 2201**

of standing and lawful due process of the law. Additionally, Demandant(s) prays to our Lord Jesus

Christ for a Declaratory Judgment order or Leave of Court for Pre-Conference preparation of a

granted Trial by Jury against Defendant(s) and the granting of perpetual injunctive relief against

such interlocutory order/void judgment, alleged creditor, staff and collection agencies thereof, and

for such additional or alternative relief as may be just and proper. Should Demandant(s) not be

afforded such Declaratory Judgment in favor of his claim, Demandant(s) reserves and thereafter

wishes, to have a Trial by Jury of Twelve(12) of his Peers .

Date: 04/05/2011

_____
Michele, one of the People
*All Rights Reserved, Under Protest, Exempt from Levy*

_____
Michele, Secured Creditor
*UCC-1-308, Without Recourse, All Rights Reserved,*
*Under Protest, Exempt from Levy,*
*non-domestic, without the U.S.*

_____
Paula-Joanne, one of the People
*All Rights Reserved, Under Protest, Exempt from Levy*

_____
Paula-Joanne, Secured Creditor
*UCC-1-308, Without Recourse, All Rights Reserved,*
*Under Protest, Exempt from Levy,*
*non-domestic, without the U.S.*

Michele of the House Di Cosola
Paula Joanne of the House Wrobel
Sui Juris, Attornatus Privatus
care of: 266 Thrasher Street
Bloomingdale, Illinois
non domestic, without U.S.
near [60108]

**EMERGENCY MOTION FOR PERPETUAL INJUNCTIVE RELIEF and DECLARATORY**
**JUDGMENT OR TRIAL BY JURY PURSUANT TO RULE 65(a)(1) and (2); RULE 9(b);**
**RULE 60(b)(3)and(4), (d)(1), (3),(5)and(6); RULE 7065; RULE 8011(d); RULE 57; RULE 38;**
**28 U.S.C. § 2201**